Lewellyn Charles  Cox IV
Prison Reg. 48963-112
FCC-Beaumont-Low
P.O. Box 26020
Beaumont Tx. 77720



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 22 2020

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

UNITED STATES DISTRICT

COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

SACV20-02064-DOC

| | |
|---|---|
| United states of america<br>                    Respondent, | SA-09-CR-000248-DOC<br><br>Petitioner's first 22555 |
| v. | |
| Lewellyn Charles Cox IV<br>                    Petitioner. | |

The folowing srguments case authorities, and facts relate

To Cox' plea for a hearing regarding a motion to vacate and

remand.

SUBMITTED,

10-5-2020

LODGED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 22 2020

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

TABLE OF CASES

A) Ineffective Assistance.......................P..1-3 1-

    II) Failure to file a motion to compel disc
        discovery..............................P. 4-9

    III) Agent Wesley Schwark committed perjury.P. 10-11

     IV) The significance if the interview having
         occurred in 2009 reveals a crime.......P. 11-14

V) New Evidence................................P. 14-16


B) Ineffective Assistance by Misrepresentation.P. 17

C) Timeliness and diligence....................P. 19

D) Vindictive Prosecution......................P. 24

E) Grand Jury Abuse............................P. 31-33

F) District Court failed to grant Cox's request for
   for a continuance rendering his self representation
   meaningless................................P. 34

G) Failure to entertain Cox's motion to compel the
   Government to grant Bacque Use immunity.....P. 39

H) Sentencing guideline calculation error
   is plainly illogical.......................P. 40-47

I) The amount of victims must be commensurate
   with the loss amount.......................P. 44-46

J) Rule 32 violation...........................P. P. 47

## A) <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Ineffective assistance is a performance that is just below objective reasonable standards, which results in prejudice to the defendants defensive strategy (See <u>Strickland v Washington</u>, 466 U.S. 668 (1984).

When a criminal defendant claims his plea was either unitelligent or involuntary on the basis of ineffective assistance of counsel, the two-part <u>Strickland</u> test is the standard inquiry to determine whether the defendant was denied his Sixth amendment right to counsel.

The Petitioner, challenges his guilty plea on the basis of ineffective assistance of counsel, resulting in an involuntary plea. Due to Attorney Thomas Wolfsen failing his investigation, by not contacting witnesses, pulling jail records, and filing a motion to compel discovery, Cox's plea was involuntary. "The long standing test for determining the validity of a guilty plea is whether the plea represents a voluntary intelligent choice among the alternative courses of action open to the defendant". (See <u>Hill v Lockhart</u>, 106 S.Ct. 366 (1995).

The Petitioner contends his plea was involuntary and unintelligent, because had he had the evidence that was withheld or the evidence his counsel should have discovered, he would not pled guilty but instead went to trial. Cox, contends his below adequate defense began when Counsel failed to file a motion to compel the Government to provide viewable copies to the defense prior to the 7/28/2011 suppression hearing regarding coerced

six pack identifications. Cox, contends that he was prejudiced by
Counsel's failure to file a motion to compel, which prevented Cox
from arguing that his 2008 photo could not have been shown to
5 separate witnesses in 2005 or 2006. The July 2011 Suppression
Hearing centered on Cox's unsupported claims that the witnesses
were coerced, because Counsel failed to show Cox viewable 6 packs.

Effective assistance would include a sufficient investigation
which in Cox's case should have included:

> (1) Counsel was required to allow Cox to see the 5 photo
>     six packs before the 6/28/11 Suppression Hearing.

> (2) Counsel, should have interviewed Jessica Bacque prior to
>     the hearing.

> (3) Counsel should have reviewed Cox's arrest record and
>     informed Cox's that he was in jail on May 23, 2005,
>     and explained to Cox that the Prosecutor is making
>     a unconstitutional threat to prosecute Cox in Count 3
>     with full knowledge that Cox did not commit the crime.
>     Cox, should have been told that there is no probable
>     cause to charge Cox in Count 3.

Without being granted a continuance after Wolfsen admitted
he lost Bacque's statement on June 27, 2014, Cox was prevented
from knowing, that the Prosecutor was making threats of
additional charges without probable cause. Cox could have
used the six packs containing his 2008 mugshot signed in 2005,
as a fair and just reason to withdraw his guilty plea, and added
this info to his motion to withdraw his guilty plea under Rule 11.

Without the continuance Cox was unable to discover the
ruling in Bordenkircher, concerning making threats of prosecution
without probable cause to induce a guilty plea. Cox had 2 days
as a pro se litigate and denied the right to prepare. United
States v farias 616 F.3d 1049 (9th Cir. 2010). Bacque engaged in

8.

PG 2

identifying random photos at the Agent's suggestion. She claims
that she never said she could identify the passengers of the
bluish green Jaguar on May 23, 2005 (see Exhibit E, Investigator
Tracy Spada's email), see also (Exhibit D, question 5, 6, and 13)
This if stated at the suppression hearing by Bacque herself
under oath would have severely contradicted the Government's
testimony that it fairly obtained positive identification of Cox
by Jessica Bacque. If, Cox would have won the suppression hearing
the Court would have to dismiss Counts 2 and 3, from being falsely
charged against Cox. And, if that occurred then the prosecutor
could not threaten consecutive sentences of 30 years, for having
more than 1 Bank Fraud §1344 count. It was Defense Counsel
Wolfsen that told Cox if he gets more than one §1344 Count,
the Court could give him 30 years consecutive. Counsel assured
Cox that if he pled guilty to one Count along with the §1349
conspiracy,charge the two sentences would run concurrent. But,
however if the charges lacked probable cause at the outset
and the prosecutor threatened prosecution of invalid charges
and offered to drop those invalid charges only in exchange
for a guilty plea, and the defendant had not known of the
misconduct, the threat inducing his guilty plea violates
Bordenkircher v Hayes, 434 U.S. 357 (1978). (Exhibit A, No. 6)

    So, Cox argues that his Counsel was ineffective for
failing to investigate and elicit Bacque's non self-incriminating
testimony at the suppression hearing, so she could testify
that she was coerced into identifying Cox, The testimony was
needed at the 7/28/2011 suppression hearing.

## (II) Failure to file a motion to compell discovery

Cox, was prevented from making the argument he now makes.
Somehow it was a perfectly executed scheme to prevent Cox
from seeing 5 photo six pack where witness Jessica Bacque,
Ronisha Jessie, Guadelupe Mendoza, Yolanda Magana, and
Brandon Pettus, identified Cox in position 4 of identical
six packs. Certainly Cox's ability to view the six packs
rested on Attorney Thomas Wolfsen, and if Cox was not given
copies he could view or even allowed to glance at the photo
six packs, then there is some degree of ineffective assistance
obvious here. But, this would not automatically qualify as
ineffective assistance if the withheld six packs were not
material to showing fabricated evidence. Once the six packs
become material to Cox showing fabricated evidence, the next
step is to show, that the fabricated evidence effected a
substantial proceeding tied to a constitutional or statutory
right. Here, we have 5 six packs that Cox was prevented from
viewing. (See Cox's Declaration Exhibit A, No. 1)[Read Intro]

Now for the first time after sentencing Cox has seen
the six packs. It was then discovered that it contains Cox's
2008 Parole Office photo. And, from there we look no further
than the dates as written on the six packs themseleves. How
could Jessica Bacque, Ronisha Jessie, Guadelupe Mendoza, sign
a photo before the photo is taken. If that is impossible then
then the positive identification was impossible, and Count 2
through 5, being based on the 6 packs are invalid. He contends

Pg 4

denying him the right to see the 5 six packs in unredacted form,
prevented Cox from entering an intelligent and voluntary plea.

   Cox, declares that the first time he seen clear viewable copies
of the six packs signed by Jessica Bacque, Guadelupe Mendoza, and
Ronisha Jessie, was in November 2014. (See Cox's Declaration,
Exhibit A, Statement No. 1). In his declaration Cox explains
how he ordered his Counsel to provide him clear copies of the
5 photo six packs identifying him in the discovery. But, however,
Counsel focus on only whether it was Cox's photo in position 4,
of all 5 six packs. Counsel missed altogether whether it actually
could be a photo taken in 2008, which would have made it
impossible to have been signed in 2005 and 2006. Very few people
in the world could look at Cox's photo and give an approximate
date of the photo. Most assuredly Cox would be the best one suited
to give a date as to when his photo was photographed. So,
essentially all the Government needed to do was make sure the
best person in the world to date the mugshot was not given an
opportunity to view it (see Cox's Decl Exhibit A, Statement 2).
Cox, contends in his declaration that he was given only
"Blacked-out" "Redacted" copies of the 5 Six packs, which
prevented Cox from noticing when and where he took the photo.
(See Copy of Jessica Bacque's signed six pack, Gov. Bates 048063, IT'S
exactly how dark it was provided in the discovery Exhibit B)

   When Counsel traveled to the Secret Service to meet with
the Prosecutor and Secret Service Agent James Mikkelson, he was
told, "the copy machines are broken", and only allowed to view

the six packs. Counsel on his own reasoned that he must only
dispel Cox's doubt that it was his picture. Counsel then went
to the Secret Service viewed the six packs, and once again on
his own determined that it was Cox's photo circled in position
4, of all 5 six packs. Counsel making his on positive ID, and told
Cox, "it's you in the picture I'm not going to argue that it
isn't you, so you don't need to see the six packs". Cox, was
never given the opportunity to see the viewable six packs,
because he had only REDACTED, with Bates numbers, all of which
were loaded on the Santa Ana City jail computer for inmate
access. It wasn't until November 2014, when Cox recieved his
first copy of the Bacque statement to read (see Exhibit G,
email from Mrs. Elizabeth Cox, Lewellyn Cox's mother, Notice
it states finally got a copy of the statement).email sent to
Appellate Counsel Jennifer Coon). So, if this is correct, and
Cox obtained a viewable six pack for the first time after
being sentenced, and it was attached to the Jessica Bacque
statement without a bates number, it would appear this copy
was not provided in the discovery to Cox. (see Exhibit H,
the Bacque statement six pack NO BATES NUMBER). Elizabeth
Cox declares that the Six Packs Cox, had and passed to the
Investigator Tracy Spada were "blacked out". She says, "I
remember talking to Lewellyn's attorney Thomas Wolfsen May
2014, and asking him to supply Lewellyn with viewable six
packs, because they were blacked out." (see Exhibit R,
statement 3). Apparently this matches a email sent on 6/16/14 Exhibit F,
Investigator Tracy Spada request viewable six packs, from Mrs.
Cox, and Mrs. Cox says she will talk to [Lewellyn] to see what



he can do. So, if all the way up until July 16, 2014, we have

evidence showing that Cox did not get viewable 6 packs, andd

then  on June 30, 2014, Attorney Thomas Wolfsen tells the Court

and Cox for the first time, that Wolfsen lost the Bacque

statement (6/30/14 TR. Vol. I P. 58-61). And, Cox declares he

never seen the statement with 6 pack attached. Compounded by

the fact that Wolfsen never told Cox that Bacque denied being

interviewed in 2005. Coxlwas uninformed, at the time of his

guilty plea, We know Inv. Spada interviewed Bacque on 6/0<u>3</u>/14,

and Wolfsen provided a summary of that interview verbally, but

left out that she denied meeting federal agents on 11/02/05.

Cox should have been given clear copies of the six pack, and

been allowed to date when his photo was photographed before

pleading guilty. Wolfsen should have told Cox, in june or

July 2014, that Bacque denies that she ever met Agent Schwark

in 2005. Cox should have **bee shown the six packs prior to**

**the DISCOVERY DEADLINE on April 27, 2014.** The failure to do so

allowed Cox to be threatened with multiple Counts that lack proba

probable cause thereby inducing an involuntary plea. On June 16,

2014, Spada sent an email requesting viewable Copies of the

the six packs she included Bates No. 048066, and wrote a statement

explaining that she needs clear photos to complete he interview

of Bacque.(See <u>Exhibit F2</u>, unvieable six pack, alleged to have

ID's Cox on May 23, 2005). (See <u>Exhibit A, No. 8,</u> where Cox expli

his mother Elizabeth Cox, found an email proving Spada was

requesting viewable photos until June 16, 2014. Cox, contends

he was influenced by misrepresentation that the 6 packs were

not fabricated. He contends his counsel was ineffective for

And, now 4 years after the suppression hearing.

hearing Cox recieved a copy of the Bacque Statement, with six pack,
it had been a previous Court filed exhibit, for the Government.
The viewable six pack Cox had waited so long to see was filed
in Document Entry 312, by the Government. It had no bates number
which is evidence that it was not provided in the discovery.
As opposed to photos blacked out like Bates No. 048063, Exhibit B was
all Cox had until November 2014. All the photos were dark enough
to be considered redacted, prior to November 2014. Attorney
Wolfsen, originally claimed that he gave the only statement to
Bacque on 6/27/14, and forgot to get it back. But, in reality,
Bacque never received any thing from Wolfsen, and Wolfsen after
sentencing sent 1 the statement to Cox's mother who emailed the
statement to Cox Exhibit G (email that shows Cox's mother "finally"
got the statement). In Elizabeth Cox's declaration she declares
that the six packs given to Cox, were pitch black (Exhibit R No. 3).
Cox, declares that the first time he seen a viewable copy of the
six pack was in November 2014 (see Exhibit A). Cox, declares that
he received Exhibit H, which was a viewable six pack shown to
Bacque by his investigator Tracy Spada. This six pack was attached
to the statement Wolfsen claimed he lost. Cox, learned for the fi
first time that Bacque had previously told Wolfsen, that she did
not have a meeting with Schwark on "11/02/05".See Exhbit D, No. 13.
So Wolfsen knew that the 2005 signing dates were impossible, but
failed to tell Cox. (see Wolfsen email his theory to Inv. Tracy
Spada Exhibit H2). Bacque, was specifically asked if she remembers
being interviewed on "11/02/05" and said "no" (Exhibit D). There
was significant ineffective assistance because Thomas Wolfsen,
failed to inform Cox that Bacque denied a 2005 meeting. Cox,
never heard that Wolfsen discovered that Bacque now denies

denies that there was a "11/02/05 meeting. This coupled with
the fact that Wolfsen failed to show Cox viewable copies of
the 5 six packs, renders Cox plea involuntary. Cox, was
induced by misrepresentation. The Government had misrepresented
that they had obtained Ronisha Jessie, Guadelupe Mendoza,
Jessica Bacque, Yolanda Magana signatures in 2005 identifying
Cox's photo.But, reality shows now that the witnesses could
not have ID'd Cox's photo in 2005 because the picture was not
taken until October 2008. (See Exhibit U, Jamala Pratt, states
that she witnessed the photograph at the Parole Office in
October 2008). So, if what Jamala Pratt says is true then the
six packs must be fabricated.

    Wolfsen, failed to explore defenses of the Case and details
involving facing Count 3, alleging that he was in a blue green
Jaguar, passing a check to Bacque on May 23, 2005. This was the
day Bacque was arrested for cashing a stolen check. Mr. Wolfsen
never told Cox he was in the Los Angeles County jail on May 23,
2005. Cox, learned well after so pleading as a suprise in open
Court on June 27, 2014 (see 6/27/14 Tr. P. 100-122). Cox,
believed he faced Count 23, as alleged in the Search Warrannt
Exhibit V  (Search Warrant Excerpt). And, had no idea he was in
the County Jail from May 22, 2005 to June 8, 2005 (17 days).
Cox's arrest record is extensive he had been arrested 9 times
prior to this May 22, 2005 arrest, so he could not state his
dates of incarceration by memory (See Exhibit A, Statement 5).
So Wolfsen failed to tell Cox there was no probable cause for
Count 3, prior to his guilty plea. Bacque claims it was James

Mikkelson who interviewed her in 2009, and she denies that there was a "11/02/05" interview.

### (III) Agent Wesley Schwark committed perjury

The significance of discovering whether the interview actually occurred in 2009, means that Agent Schwark committed perjury within his declaration filed in opposition to Cox's July 2011 motion to suppress. He committed Perjury during his testimony supporting his declaration. Then, 3 years later during his June 27, 2014, testimony he committed perjury again (see CR 6/27/14 P. 70-100). He declares that he obtained the interviews and signed six packs for all 5 witnesses in 2005 and 2006. But, his perjury is exposed because Cox's photo is a 2008 mugshot. Both, Jessica Bacque, and Ronisha Jessie dispute that they met any federal officers who questioned them in 2005 (Ex. I).

Then, after Cox seen the photo he discovered that it was his 2008 mugshot. Rewinding Back to June 27, 2014, Wolfsen was ineffective for failing to ask Bacque what year she was infacti interviewed during her testimony where she denied writing the "11/02/05" signing date. Keep in mind Schwark testified that Bacque wrote the date on the six pack. (See CR 6/27/14 P. 100, and P. 144). It would not have violated Bacque's privilege against self incrimination to ask when she was interviewed. It is therefore Cox's claim that Wolfsen was ineffective for not asking Bacque when she was interviewed before waiving a question by question basis. Cox, never had an opportunity to view the Bacque statement and had no idea that she was claiming she was *NOT*

interviewed by Agent Wesley Schwark as Schwark testified. Counsel
again was ineffective for not informing Cox that Bacque denied
being interviewed in 2005, and clarifyed that she was infact
interviewed in 2009. This line of questioning would have alerted
Cox that he must see the six packs, because they could have at
that moment alerted Cox that it was a 2008 mugshot.

Counsel, waived further questioning with full knowledge that
Bacque, was denying that she was interviewed by Schwark in 2005.
Bacque denies any federal 2005 interview. This would necessarily
exclude Schwark, because Schwark was transferred to President
security in DC in 2007 as testified (see CR 6/27/14 P. 72-84).
So, if Schwark was transferred and Mikkelson took over in 2007
as he testified (CR 6/26/14 P. 5-10), then it had to be Secret
Service Agent James Mikkelson as Bacque claims in her statement
(Exhibit D, Ques. 6), Also see Spada's report Exhibit J).

Cox, contends that Agent Schwark never met or interviewed
Jessica Bacque or Ronisha Jessie, and that his entire testimony
was perjury both at the July 2011 suppression hearing and his
June 27, 2014 testimony.

### (IV). THE SIGNIFICANCE OF THE INTERVIEW
HAVING OCCURRED IN 2009 REVEALS A CRIME

Cox, contends that there was a criminal offense committed
to obtain his conviction, just like the crime Detective Michael
Foder committed (see Case No. 1:18-CR-00097-PKC Ex. L). This Case
is just like the Foder conviction, only the prosecutor spotted
the fact that the photos could not have existed on the dates

Detective Foder Alleged, because the phot had yet to exist on
signing dates months before the mugshot was photographed.
Science literally exposed Foder's attempt to fabricate the 6
pack (see Detective Foder Indictment Exhibit L).

It shocks the conscience what Foder did, just as it should
shock the conscience, when the same thing happened to Cox by
Agent James Mikkelson, who employed Agent Schwark to claim he
conducted the interview that obtained signing dates prior to
Cox's mugshoy being photographed, (See Exhibit M, Det. Foder
New York Times Article explaining Foder's federal prosecution).

Notice the Indictment against Detective Foder was filed on
February 29, 2018, but notice Cox filed his indicative Ruling
request on February 18, 2018. Cox apparently discovered the
crimes Agent Mikkelson and Agent Schwark committed prior to
the Foder Indictment.

Obviously it is a crime under federal law to fabricate
the evidence as Det. Foder did. And, apparently the New York
Federal Prosecutor's Office, sought prosecution. But, here
Assistant U.S. Attorney Joseph T McNally has not investigated
and discovered that the mugshot was photographed in 2008. The
Prosecutor ignore Appellate Counsel Jennifer Coons request
to investigate. (See Exhibit N, Attorney Coon's email).

Cox, was stonewalled by Jennifer Coon's refusal to pursue
the claim on direct appeal, suggesting that Cox could only seek
to redress the involuntary plea on Habeas Review.

Now in his 2255, Cox seeks to redress his ineffective assistance claim that was the cause in Cox's inability to discover that his photo was a 2008 mugshot, which could have never been identified in 2005 and 2006. He contends that a crime was committed before the Grand Jury, and perjury at the suppression hearing. It continued with perjury at the pre-sentencing hearing twice. This was done for the purpose of concealing fabricated evidence, which was used to violate Cox's right to a voluntary plea.

The question turns on whether after the discovery of the 5 fabricated six packs, does count 2, 3, 4, and 5 still show that there is probable cause to charge Cox? If not, then charging Cox with these Counts without probable cause and carrying out an offer to drop those counts in exchange for a guilty plea Violaes Bordenkircher (threatening a charge without probable cause is vindictive prosecution).

Just as the Government prosecutes Cox, the Agents or Government employee that fabricated the evidence should be prosecuted. It should be noted that Mikkelson falsely stated that it was not he but Agent Schwark who obtained the positive identifications on the six packs (see April 4, 2014;.P.73-78) But this was perjury, Mikkelson interviewed the 5 witnesses in 2009, and conspired with Agent Schwark to say he did the interview and obtained the witnesses Bacque, Jessie, Mendoza, Magana, and Pettus signature Identifying Cox's photo. We know this because both Ronisha Jessie and Jessica Bacque only identify Mikkelson as the Agent.

Pg 13

The ultimate issue is whether Cox's new evidence contradicts
the sworn declaration and testimony of Agent Wesley Schwark at the
July 28, 2011 (Suppression Hearing), and June 27, 2014 (pre-
sentencing hearing). It was on July 28, 2011 when Schwark testified
alleging that he interviewed Jessica Bacque, and Ronisha Jessie
in 2005. Agent Schwark provided an accompanying declaration.
Then on June 27, 2014, Schwark again testified that he interviewed
Jessica Bacque, Ronisha Jessie, Yolanda Magana, Mr. Gaudelupe
Mendoza in 2005, and Brandon Pettus in 2006.(P. 70-122) (pre-
Sentencing Hearing). Now Cox, brings forth evidence rendering
the interview and signing dates impossible.

## (VII).   New Evidence

(1).   Cox has obtained a statement from Jamala Pratt, his
       ex-wife, declaring that she remembers when Cox
       took the photo used in position 4,of all six packs.
       Jamala Pratt, declares under the penalty of perjury
       that she remembers when Cox's parole officer took
       the photo in the Ontario Parole Office lobby. (Exhibit
       U, Jamala declaration)explaining how she witnessed
       Cox's parole agent take the photo in 2008).

## Significance of this evidence

(a).   If she witnesses Cox take the photo in 2008, then
       then it could not have been showed and signed in 2005
       or 2006. This would invalidate the dates written on
       the six packs for Jessica Bacque, Ronisha Jessie,
       Guadelupe Mendoza, Yolanda Magana, and Brandon Pettus.
       Second this would show that Agent Schwark committed
       perjury on 7/28/11 and 6/27/14. Such perjury supported
       as the only means of probable cause tying Cox to
       Count 2, 3, 4, and 5. And if these identifications made
       the only means of probable cause for those counts
       then the prosecutor's charging those counts and inducing
       Cox to plead guilty, through offers to drop those
       counts in exchange for a guilty was a constitutional
       violation. Vindictive prosecution has occurred without
       probable cause. Therefore Cox's guilty plea was
       involuntary.

**(2).**   Cox's mother declares that she purchased the shirt
Cox is wearing in the six pack photos where all
five witnesses allegedly signed Cox's 2008 photo
in 2005 and 2006. Cox's mother delcares that she
bought the shirt on August 2, 2007, which would
make it impossible to be shown on Cox in a photo
taken in 2005 or 2006. Mrs. Elizabeth Cox contends
that the shirt could not have been shown on Cox
prior to August 2, 2007. <u>Exhibit R</u>

### Significance of this evidence

**(a).**   If Mrs. Cox, can positively identify the shirt
as the one she had givien the Petitioner for his
birthday August 2, 2007, then the six packs for
Jessica Bacque, Ronisha Jessie, Guadelupe Mendoza,
Yolanda Magana, and Brandon Pettus are all
fabricated evidence. (<u>Exhibit R</u>)

**(b).**   If the six pack dates are falsified then Agent
Wesley Schwark committed perjury, and this perjury
induced a guilty plea through the use of fabricated
evidence and the filing of false charges used as a
threat, in which the prosecution would drop, only
in exchange for a guilty plea. Counts 2 through 5
rest on the positive identification of Cox, by
Jessica Bacque, Ronisha Jessie, and Guadelupe Mendoza.
Without the positive identifications no probable
cause to charge Cox with Counts 2 through 5. This
means it was a <u>Bordenkircher Violation</u> to threaten
charges lacking probable cause then offering to drop
them in exchange for a guilty plea.

**(VIII).**   <u>Jessica Bacque Statement</u>

**(1).**   Jessica Bacque declares that the only time she could
see clear faces was on May 16, 2005 where there
was one Asian Male and one Black male who passed
her the check. This would contradict Overt Act No. 1
in Count 1, and could be material evidence as to
contradicting the Indictment allegation that it was
two Black Males. More significant is Bacque states
that she never said there was two Blck males. Because
Cox's Counsel Thomas Wolfsen told Cox that Bacque
had recanted her arrest statement that it was one
male Black and one Male Asian, to replace it with
two Black males Cox, and codefendant Angus Brown
the misrepresentation influenced Cox's guilty plea.

Pg 15

**(a) .**   If Bacque did not recant her original story that
there was two male one Black and One Asian as
stated in the police report written the day of
her arrest. And, the federal agents lied and said
she changed the description to two Black male,
then Cox received ineffective assistance of
counsel. If Bacque never told any agent that there
was two Black males in the white Jaguar on
May 16, 2005, then the federal agents fabricated
the evidence. If the evidence (Statement) was
fabricated then Cox's guilty plea was induced
by misrepresentation. (see Bacque Statement Exhibit
D) see (Exhibit T, statement from investigator
Tracy Spada). (Cox declares that he was told by
Attorney Thomas Wolfsen that Bacque changed her
story from one Black one Asian to two Black males
identifying Angus Brown and Cox)see Exhibit X)

**(b).**   Bacque declares that she was coerced into identifying
photos after she told Agent Mikkelson that she could
not identify who she previously seen (Exhibit D,
Ques. 5, 6, and 7) Bacque Statement). (See also
investigator Tracy Spada report, alleging that
Bacque claimed she did not meet with federal agents
until 4 years after she was arrested. Bacque was
arrested on May 23, 2005). This would mean that
Bacque was not interviewed in 2005, as Schwark
testified, (see Tr. 6/27/14 P. 100). If Bacque
was interviewed in 2009 and not 2005 as Schwark
testified then, it could not have been Schwark
who conducted the interview because Schwark was
transferred in 2007, well before the actual 2009
interview with Agent James Mikkelson. (see
Schwark testify to his tranfer 6/27/14 P. 68-80).

**(VIII).**   **Ronisha Jessie**

Ronisha Jessie states that she never met Agent
Schwark, and that there was no meeting in 2005
where agents showed her six packs, She declares
that the interview occurred in "late 2009".

**(a).**   Ronisha Jessie's statement suggest first that
Schwark commited perjury when he testified on
June 27, 2014, that he interviewed Ms. Jessie
on "11/04/05". (See June 27, 2014, Trans. P. 70
through 100).(Exhibit I)

(B) **Ineffective assistance by Misrepresentation**

> (1) Wolfsen, told Cox that Government Bates 048064 was
> Cox's photo positively identified driving a gold
> Crystler and sitting in the blue green Jaguar.
> Wolfsen said Bacque identified Cox in bates 048064
> as being present passing a check on May 23, 2005.
> Wolfsen should have obtained viewable six packs,
> now Cox has evidence that this is not his photo.
> identified by Jessica Bacque. Exhibit A, No. 9)

Cox fought vigorously to obtain all of his mugshot photos.
Cox filed multiple freedom of information act requests with
the State and Federal agencies. He Obtained more than 14 photos
mugshots (see Exhibit K). None of these mugshots match the
unviewable mugshot in Government Bates Number 048064. Cox, declar
states that he is missing all but one mugshot, and that is the
Ontario Parole Office mugshot taken wearing a plaid shirt as
depicted in Exhibit H). He declares that there is no photo
matching the shirt and there are no other mugshots taken of Cox.
(See Exhibit A, No. 9). **Cox, seeks a discovery order to compel
the Government to provide a viewable six pacK for Bate No. 048064.**

> (2) Wolfsen incorrectly informed Cox that there was probable
> cause to charge Cox with §1029 (Access Device), because
> wolfsen believed checksware "access devices", and that
> AUSA McNally's threat to charge Cox with "Access Device"
> fraud without probable cause violated Bordenkircher.

Cox, contends he was told that the Government could charge
§1029 for each check, and that the letter from AUSA McNally was
accurately showing Cox could receive a "Access Device" increase
of 2 offense levels (see Exhibit A2, AUSA McNally's note, given
to Cox by Wolfsen from McNally). Notice it charges access device
which was McNally's threat that if Cox didn't plead guilty he would
be Charged with "Access Device" Fraud §1029) (Exhibit A, No. 10).

Unfortunately, Cox was misinformed by Attorney Thomas Wolfsen, when Wolfsen told Cox that Cox can be charged with "access Device" (§1029), for passing bad checks. At the change of plea hearing on 12/16/2011, Cox believed that the Prosecutor had probable cause to charge Cox with §1029, for passing forged checks. Wolfsen misrepresented the statute, claiming that the checks qualify as access devices. Wolfsen stated McNally, agreed not to charge Cox with "Access Devices" if Cox pled guilty. More, evidence is noted on the Government Spreadsheet showing that the Government's intended loss calculation, added $500 per check using the "Access Device" rule. (see Exhibit P, spreadsheet). Notice Farnaz Pearl $500 per check added in each checkbook total 500 checks equal $225,000 loss in its intended loss column.of Government Spreadsheet 15A, and 15B. Cox had every reason to believe the Government had probable cause to charge Cox with §1029, because Wolfsen told Cox it was "posible due to the routing number on each check". Wolfsen said the routing number printed on each check is a separate "access Device", even though its the same number. Wolfsen then said that McNally was planning to Charge Cox with §1029, if Cox did not plead guilty. Wolfsen, told Cox that by knowing someone on the Idictment had "access devices" that it would be "access device" fraud, and because checks are access devices, the Government could legally charge Cox with "Access Device" fraud if Cox refuse to plead guilty. Cox, discovered that this was untrue and attempted to address the Court on June 30, 2014 Vol. III, P. 20-25 (Trans). The Court failed to entertain whether checks are access devices, which prevented his argument that his plea was induced without probable cause.

Pg 18

## C) <u>Timeliness and Diligence</u>

In seeking to prove the crimes committed to obtain Cox's conviction, Cox did almost everything humanly possible including, filing a civil suit and using his subpeona power to get to his mugshot photo custodian of record who is be required to have the date and location stating when and where the photo was photographed. Cox, filed case 8:16-CV-01222-CJC-KES. His suit was quickly doomed at the onset; however Cox pursued subpeona power as soon as he got a case number. He filed more than 13 subpeonas, and uncovered a streamline showing that Cox did not cut his mustache thin straight across until after his arrest while in the Maricopa County Jail, he began to cut his mustache thin straight across due to having no mirror and using the shiny side of snider's petzel bags wrapped around a milk carton as a mirror. He declares that it was impossible to cut a angle mustache to his nose because the razors in Maricopa County Jail had on 1 inch handles, which required a fist. Cox first became aware that his mustache was cut in a fashion that happened only after his arrest in the Maricopa County Jail. So Cox, subpeonaed all of his mugshots and received a majority of them 14 in total. (see list of responses to his subpeonas. (See <u>Exhibit W</u>) (See Cox's declaration concerning his mustache)<u>Exhibit X</u>).

Cox sent a freedom of information request to "Cal-Photo Image Network", which is the name titled on the six pack signed by the 5 witnesses. He rerequested that the State investigate the URL (Uniform Resource Locator), and determine the person who constructed the six pack.

## THE URL CANNOT BE LOCATED

The URL, is the identifiable webpage on the Government's database. It Identifies each page specifically. The California Department of Justice, stated that it returned no responsive records. That's odd because a Uniform Resource Locator, is essentially the address to where the record could be found. Nothing disapears from the web.

But, oddly the Government provided document Bates Number 048064, which was the only six pack out of 22 defendants that shared the same URL number with another six pack. That other six pack was Cox's six pack Bates Number 048063. Cox, would seek a subpeona to determine where this URL Number is assigned.

The California Department of Justice stated that it had no responsive records to Cox's request. Cox asks only to be heard, because he knows that photo in position 4, of all 5 six packs are fabricated because the signing dates written in 2005, and connected to count 1, Overt Act 1 though 7, and Count 2, 3, 4, and 5. The problem is apparent because Cox did not take the photo until October 2008, it could not have been been signed in 2005. (See Exhbit S; California Department of Justice, states that it has no responsive record to the URL).

Cox also requested his appellate counsel Jennifer Coon to obtain the mugshot photo information from AUSA MCNally, but McNally, said his "Office has no further comment" (see Exhibit N).

Cox, urges the Court to note that his Counsel was ineffective for not showing him six packs in viewable form leaving Cox only with redacted copies where the photos were unviewable (See Exhibit B) pitch black photos).

Withholding clear six packs until November 2014, was a violation of Cox's right to make a defense against the alleged positive identifications inducing his guilty plea. Cox, asks this Court for an opportunity to show through Federal and State records that the photo of him depicted in all 5 six packs was photographed at the California Parole Office in October 2008.

He brings forth his declaration of his seeing a viewable six pack in November 2014, for the first time. The Government could have prevented this 2255 argument a very long time ago when Appellate Counsel Jennifer Coon requested the information pertaining to the photo. Cox, would be crazy if the photos showed a origin and a date prior to November 2005.

But, how imperfect would the prosecution be if it is determined through California record, and Federal email records both show Mikkelson received the six pack in 2009 from the FBI, after co-defendant Kelly Benson was arrested after monitoring a wire tap. Benson was the first person in 2009 to identify a photo of Cox in a 6 pack as alleged by the Government.

## SUMMARY OF INEFFECTIVE ASSISTANMCE

(1) Counsel failed to provide Cox with a viewable copy
of 5 six packs which were the only means of
establishing probable cause for Count 2, 3, 4, and
5. The six packs also made up the first 7 overt acts
in Count One (conspiracy). These six packs are now
claimed to be fabricated, only discovered after
Cox was given an opportunity to view.

(2) Wolfsen was ineefective for not telling Cox before and
after pleading guilty prior to June 27, 2014, that
Cox was in jail on May 23, 2005. Wolfsen, failed
to present this evidence at the suppression hearing
which would have prevented threatening to prosecute C
Cox in Count 3, and called in to question Count 2, because it
claimed Bacque claimed Cox was there on May 16, and May
May 23, 2005. If Bacque seen Cox on the 16th how could
she mistakenly see Cox on the 23rd if Cox's was in
Jail.

(3) Wolfsen told Cox that he could be charged with §1029,
just by knowing someone else committed the crime,
if their name is listed on the Indictment. The threat
of §1029, and the fabricated six packs, being without
probable cause for Counts 2, 3, 4, and 5 should
have been explained to Cox'before pleading guilty.

(4) Wolfsen failed to investigate.

(5) Wolfsen failed to compell discovery, or show Cox a
clear six pack prior to sentencing.

(6) Appellate Counsel Jennifer Coon failed to file
vindictive prosecution, after being made knowledgeable
that McNally threaten Cox with access device fraud
§1029, without probable cause.

(7) Wolfsen was ineffective for failing allow Cox to see
se the Jessica Bacque statement, which had an attached
viewable six pack, until after sentencing. Wolfsen was
ineffective for losing the Bacque statement on 6/27/14.

(8) Wolfsen was ineeffective for not questioning Bacque on
6/27/14, and asking when she was interviewed, after
Bacque had stated that she was not interviewed until
2009. Wolfsen waived a question by question basis.

(9) Wolfsen should have asked Bacque during her direct
examination under oath whether it was Agent Schwark
or Agent Mikkelson who interviewed her, because Wolfsen
knew bacue claimed it was in 2009, and Schwark trnaserid
in 2007.

## Cox's Mustache is significant

Here we have a situation where, a photo can logically be dated by the person in the photograph if he has an opportunity to see the photo. Denying Cox the opportunity to see the photo denied Cox the right to discover fabricated evidence.

Cox, declares that his mustache is cut thin straight across something that Cox did not learn how to do until his incarseration in the Maricopa County Jail in Arizona. Cox, was arrested on October 12, 2007 and held in the Maricopa County Jail until March 8, 2008 (See Booking Photo when Cox was extradited.bach to California Department of Corrections Chino Prison. Cox started cutting his Mustache thin straight accross in the Maricopa County jail for the first time. This is how Cox and his family can identify the date of the photo.) (See Exhibit X, Cox, Mustache Declaration). *(ExHIBIT E2)*

Cox contends that he was denied the opportunity to view the mugahot, in position four of 5 separate six packs. He Contends that even all the way up to senting He was not given a clear copy of the six packs to view. (see Exhbit A).and (Exhibit C).

Cox, seeks.to point to his denied right to see the six packs as. a Brady Violation, and or a Due Process violation, which was denied by withholding viewable six packs. He contends Attorney Thomas Wolfsen was ineffective. Cox declares that upon his first sighting of the mugshot he know his phot is a 2008 mugshot.

## D) <u>VINDICTIVE PROSECUTION</u>

The Supreme Court has held that a prosecutor can not threaten to prosecute a more charges or more severe charges in retaliation for a defendant opting to employ his constitutional right to trial, if the prosecutor lacks probable cause to file the charges against the defendant. This claim of vindictive prosecution tracks the language in <u>Bordenkircher v Hayes</u>, 434 U.S. 357 (1978).

"As a practical matter, in short, this case would be no different if the Grand Jury had indicted [the defendant].[with more charges] from the outset, and then offered to drop that charge as part of the plea bargaining" <u>Bordenkircher v Hayes</u>, 434 U.S. at 360-361.

> "finally, prompting prosecutors to file the harshest possible charges at the outset would [cause] prejudic[e] to defendants, for an accused would bargain against a greater charge, face the likelihood of increased bail and run the risk that the court would be less inclined to accept a plea bargain" <u>United States v Kent</u>, 633 F.3d 920 (9th Cir. 2010).

So, the question for this Court is whether charging Cox with 40 counts of substantive bank fraud §1344, without probable cause, and offering only to drop those 40 counts in exchange for Cox pleading guilty to Count 23, is vindictive prosecution?

Cox, contends that vindictive prosecution can be found if the charges are filed first at the outset, then dropped only in exchange for a guilty plea, if those charges lacked probable cause.

Here, the Prosecutor filed 40 counts of §1344, against Cox, all of which lacked probable cause to charge Cox. The issue here is that §1344 is a substantive bank fraud offense, which requires probable cause connecting Cox's conduct to each offense. But, however the Prosecutor had no evidence connecting Cox to any of the 40 Counts. Infact, the prosecutor had only claimed evidence that it was Cox's voice on a phone call to a bank in Count 23.

In addition, Count 23 had only Special Agent James Mikkelson as the identifying witness identifying Cox's voice on the 2009 phone call. Cox, contends that he had never met Mikkelson before he was indicted and that his speech identification was unreliable. Without the unconstitutional charges naming Cox in those 40 Counts, Cox would not have pled guilty but instead proceeded through to trial. Cox, contends that <u>both fabricated evidence and the threat of vindictive prosecution induced his guilty plea.</u>

### (I) Count 3

In Count 3, the Indictment charges Cox with being in a bluish green Jaguar jointly passing a stolen check to Jessica Bacque on May 23, 2005. However, though the claim may be based on the possibility that Cox and 3 other Black men jointly passed the check to Jessica Bacque, but the Prosecutor knew Cox was not present that day because he was in the Los Angeles County Jail, and could not be in the bluish green Jaguar as they claim in Special Agent James Mikkelson's declaration (see <u>exhibit K</u>, Excerpt of Search Warrant Affidavit).

exhibit V, excerpt of Search Warrant affidavit by Agent Mikkelson).

New Evidence associated with Count 3

At the time of Cox's guilty plea, Cox had not obtained a interview from Jessica Bacque, who now denies that she identified Cox as being present in the bluish green Jaguar on May 23, 2005. (see Exhibit D, Ques. 5, 6, and 7). In addition, Cox had not even heard that Bacque was denying being able to see the faces of the 4 Black men in the Bluish Green Jaguar on May 23, 2005 (see Exhibit E, Investigator Tracy Spada email).

If, what Bacque says is true, then the Government made false probable cause both in the search warrant affidavit, and in regards to Count 3 in the indictment. This means the agents lied conveying this false identification to the Grand Jury and the Court in order to charge Count 3.

The level of error rises to intentional if this is true. Yes, it is possible that the Prosecutor failed to check Cox's arrest record to determine Cox was in jail on May 23, 2005. But, it is not possible to allege Bacque ID'd Cox as present on May 23, 2005, if Bacque never ID'd Cox. The Search Warrant Affidavit supported the claim that Bacque ID'd Cox as present on May 23, 2005, yet Bacque denies this. Cox, was charged with Count 3, with full knowledge that Bacque never ID'd Cox, and despite the fact Cox was in jail, Count 3, never obtained probable cause, regardless of being charged in the Indictment. The allegations can be based on no less than perjury, if Bacque denies that she implicated Cox. If Count 3, is based on perjury, then charging Cox with Count 3, then

offering to drop it in exchange for a guilty plea to a different
count was a violation of Bordenkircher.

Count 2

In Count 2, the Indictment charged 2 Black males were
present passing Jessica Bacque a stolen check on May 16, 2005.
However, Bacque denies that she ever told anyone that Cox was
present in place of the Asian male on May 16, 2005. In fact,
on June 27, 2011, Bacque told Cox's mother that "they are
framing Cox", and explained that she does not recognize Cox,
and that she never said it was 2 Black males present on May 16,
2005. Bacque disputes that she said it was two Black males, but
states it was one Black male who she identified, "Homicide" aka
Angus Brown. She remains consistent with her police interview
stating it was one Black male named "Homicide", and a unidentified
Asian male. This would mean that the allegation supporting Count
2, was completely fabricated by the Government, and used to
threaten Cox with prosecution. The fact that the prosecutor
dropped Count 2, does not remove the fact that it induced Cox
to plead guilty. (Exhibit R, Elizabeth Cox Declaration).

If, the Government is allowed to make up allegations, commit
perjury at the Grand Jury to obtain the Indictment, then offer
to drop the false allegations in exchange for a guilty plea
it has committed vindictive prosecution. Pursuant to Bordenkircher
such conduct falls under the veil of prosecutorial misconduct.
(see Exhibit R, Elizabeth Cox's Declaration)

## NEW EVIDENCE

It was a search for the truth that Cox needed in order
to decide whether to plead guilty. But, here, his counsel
was ineffective. Cox, contends that had he known the allegations
lodged against him allegedly by Jessica Bacque, Ronisha Jessie
and Guadelupe Mendoza were in in.fact allegation completely
made up by the Government, he would not have pled guilty, but
instead went to trial and fought Count 23, which was a single
bank fraud count alleging that it was his voice on the
phone call allegedly ordering checks. Cox, states here that it
was not his voice, but because he feared that Jessica Bacque,
Ronisha Jessie, and Guadelupe Mendoza were prepared to lie
to prevent their own prosecution, he was induced to plead guilty.

Attached, Cox has obtained a notarized statement from
Ronisha Jessie, where she denies that she met with Agent
Wesley Schwark in 2005, and states that she met Agent.Mikkelson
in 2009. She declares the only time she was interviewed was in
2009, concerning the check she cashed associated with Count 3.
(See Ronisha Jessie's Notarized statement Exhibit I).

Ronisha Jessie essentially says that Agent Wesley Schwark
is lying, and that Agent James Mikkelson interviewed her, and
made up the statement that Cox gave her a check.

If, what Ronisha Jessie says is true, then this Court
would be compelled to apply the Hill v Lockhart, 474 U.S. 52,
59, 106 S. Ct. 366, 88 L.ed, 2d 203 (1985) test.

Is there "a reasonable probability that, but for [misconduct]

he would not have pleaded guilty and would have insistedtomal
going to trial": (Hill v Lockhart).

This concept has been embraced by the Ninth Circuit in
Sanchez v United States, 50 F.3d 1448 at 1453 (9th Cir. 1995)

> "A defendant's decision whether or not to plead guilty
> is heavily influenced by his appraisal of the prosecution's
> case... A waiver cannot be deemed intelligent and voluntary
> if entered without knowledge of material information
> withheld by the prosecution."

Cox, argues that not only was the evidence fabricated
against him but that the fact that the evidence was fabricated
against him, and withheld by the prosecution. Being that the
prosecution was the only one, who knew that the evidence was
fabricated.

> "The Officer's affirmative misrepresentation, which informed
> the Defendant's decision to plead guilty and tinged the
> entire proceeding, rendered the Defendant's plea involuntary
> and violated his due process rights." (United States v
> Fisher, 711 F.3d 460 (4th Cir. 2013).

> "It is well established constitutional right to the due
> process of law to not have evidence fabricated or
> false statements against him in order to prejudice a
> criminal case against him" Deverauxv v Abbey, 263 F.3d
> 1070 (9th Cir. 2001)

> "The elementary question is whether a defendant standing in
> the petitioner's shoes would likely have altered his
> decision to plead guilty had the prosecution made clean
> breast of the evidence in its possession" Ferrara v
> United States, 456 F.3d 278 (1st Cir. 2006).

The prosecution knew that Mikkelson did the Ronisha Jessie and
Jessica Bacque interview, and that it was not Agent Wesley
Schwark, who knew It is perjury during the 7/23/2011 suppression
hearing, when he declared under perjury that he interviewed
Ronisha Jessie, and Jessica Bacque. The Prosecutor knew that
it was in fact Agent Mikkelson who interviewed both in 2009.

Pg 29

So, pressing forward on ineffective assistance before
discussing the formulated irregularity caused by perjury and
prosecutorial misconduct, Cox, contends that his counsel was
ineffective for failing to interview Jessica Bacque and Ronisha
jessie before the 7/1&/201 suppression hearing. If, Counsel
would have interviewed them he would have discovered that
the signing dates alleging 2005 interviews was fabricated
for the purpose of inducing a guilty plea.

Prosecutorial misconduct encompasses knowledge known
only by its police officers investigating the case. And, because
both Agent James Mikkelson and Agent Wesley Schwarkkknewtthat
Schwark never interviewed Jessica Bacque or Ronisha Jessie
their misconduct falls on the prosecutor. Because if he didn't
know he should have.bottom line.

The charges in Count 1, 2, 3, 4, and 5 were in fact
based on perjury at the Grand Jury, Perjury at the suppression
hearing and perjury at the 6/27/14 hearing when Agent Schwark
falsely testified that he interviewed both Ronisha Jessie and
Jessica Bacque in 2005. When in fact, the truth is the signing
dates on the face of the six packs were forged, because Cox's
photo is a 2008 California Parole Office photo, and could not
have been signed 3 years before the mugshot of Cox was taken in
2008. Simply put, a 2008 photo can not be shown and identified
3 years before it exists.

### THE EFFORTS COX TOOK TO OBTAIN THE PHOTO DATES
Stonewalled, at every corner, is how Cox describes his
attempts to obtain the custodian of record, and the offecer's
Name who made the six pack

E) <u>GRAND JURY ABUSE</u>

"Defendants may establish such Grand Jury abuse by demonstra
demonstrating that the prosecutor obtained an indictment
by knowingly submitting perjured testimony to the
grand jury" United States v Claiborne, 765 F.2d 784 (9th
Cir. 1985).

Cox, argues that the Prosecutor never had probable cause to
charge Cox with Count 1, Overt Acts One, through Seven. It
did not have probable cause to charge Cox with Count 2, 3, 4, and
5. In particular the prosecutor knew either by proxy known
though the knowledge of his officers, or personally knew, that
Cox did not commit these counts and specific Overt Acts.

Plain is that Count 3, charged Cox with Bank Fraud §1344,
passing a check to Jessica Bacque. The Government proffered
only a six pack identification circling Cox's 2008 photo in
2005. More over, the knowledge put to the prosecutor is the
knowledge known by his agents. Certainly one could argue that
a 2008 photo could not be identified in 2005. If this is true
then the six packs used to obtain the Indictment were fabricated.
Blatantly the prosecutor charged Cox with Count 3, which alleged
that Cox was identified by Bacque on May 23, 2005. But, the
prosecutor knew or should have known Cox was in the Los Angeles
County Jail that day. And, the prosecutor should have known
that Bacque denies that she seen Cox on May 23, 2005, because
she states taht she could not see clear faces.(Exhibit E ).

The Prosecutor charged Cox with Count 3, threatened to
convict Cox of Count 3, but offered to drop it if Cox pled
guilty. This was Grand Jury abuse because it led Cox to

believe through misrepresentation that there was probable

cause to charge Cox with Count 3, despite knowing Cox was
*NoT*

in Jail the day of the offense making it impossible for Cox

to be in a bluish green jaguar on May 23, 2005. The elicited

perjury caused the Grand Jury to indict Cox in Count 3  (see

search warrant affidavit claiming Bacque ID'd Cox (Exhibit V).

But, we have an issue with the fact that Bacque denies

that she could see anyone on May 23, 2005. If this is true

then the officer committed perjury falsely alleging that

Bacque ID'd Cox. Cox request that this Court see the particlariz

particularized need for the Grand Jury Transcripts concerning

the statements alleging Bacque ID'd Cox.

As it relates to the Ineffective assistance claim above,

Cox asks this Court to consider the effect of charging false

charges; in a defendants decision to plead guilty. Here, the

false charges carried a potential consecutive 30 years. The

decision to plead guilty heavily weighed on whether Count 3

would be dropped. At the time of pleading Cox had no idea he

was in the County Jail on 5/23/05. But, being a prosecution

the Government knew about all of Cox's arrests. Therefore,

McNally by way of the FBI, had Cox's arrest record since

August 2009. Here, we have Count 2, 3, 4, and 5. All based on

falsified six pack identification. If the photo is a 2008 Photo

signed and identified in 2005, the laws of nature would deny it.

Therefore if these six packs were presented or mentioned to the

Grand Jury then the Indictment is based of fabricated evidence.

We know that Cox has evidence detailing his positive determination that his photo is a 2008 photo.(See Cox's Declaration Exhibit A) We can reason that the Grand Jury is the deciding factor in the probable cause determination. With that being said there was Grand Jury abuse if the six packs were alleged identification of Cox was used at the Grand Jury. This would include the mere mentioning of positive identification.

In essence the abuse at the Grand Jury to convince the Grand Jury to charge Overt Act One through Seven, would include a tail that Cox was identified passing these stolen checks as alleged. If, Cox was identified then by who. If that part comes down to these falsified six packs then we have abuse at the Grand Jury.

This abuse however was tactical. It reads like "Hit him with everything but the kitchen sink, and all the false stuff well-drop if he pleads guilty" paraphrasing. So, Cox facing 30 years for each bank fraud count was concerned with any bank fraud count that had an allegation of evidence.that ID's Cox. Out of all the Bank Fraud Counts Counts 2, 3, 4, änd 5 relied on a single six pack identification by each witness. all other bank fraud counts but Count 23, had no allegation against Cox. So, Cox seeks to obtain the Grand Jury transcript to show that there was Grand Jury abuse used to induce Cox's guilty plea.

Cox, seeks to obtain the Grand Jury Transcripts, to prove his plea was induced by charges that lack probable Cause.
cause

(F)

F)     DISTRICT COURT FAILED TO GRANT COX'S
       REQUEST FOR A CONTINUANCE RENDERING HIS
       2 DAYS SELF REPRESENTATION MEANINGLESS

Here, Cox contends that he was granted his pro se rights, and was denied a continuance needed to discover the real essence of the new evidence. Cox declares that his counsel Thomas Wolfsen failed to disclose:

(1) Bacque denied meeting Agent Schwark in 2005, and states that the interview happened in 2009. (Exhibit E, H2, J, and T) [only evidence for Counts 2 through 5].

(2) Bacque, denied that she ever identified the the 4 men in the Bluish Green Jaguar on May 23, 2005. [this [ONLY EVIDENCE SUPPORTING COUNT 3] (Exhibit D) No.66)

(3) Bacque maintains that the two men whotwas insidegthe white jaguar on May 16, 2005, was one Black and one Asian. Bacque maintained that she saw only two men the Chinese guy and the Black Guy. [TWOaBLACK MEN CHARGED IN THE INDICTMENT ONLY EVIDENCE SUPPORTING PROBABLE CAUSE WAS 2 SIX PACKS IDENTIFYING TWO BLACK MEN INCLUDING COX, REPLACING THE PREVIOUS DESCIBED ASIAN]. (Exhibit D, No. 6).

Cox, contends that if he had known during his 2 day pro se allowance he could have explained to the Court that Bacque is saying that she did not alleged two Black men were present on May 16, 2005. Cox; could have alerted the Court that there is fabricated evidence, attached to the Bacque statement, for which he requested a 4 day countinuance to retrievethhissimportant Bacque Statement that he had never seen. Cox, relied only on a summary of its content, without all the important factorsus numerated above as (1), (2), and (3). In particular if Wolfsen would have included in his summary that Bacque denies meeting Agent Schwark on "11/02/05", then Cox would have been alerted to view the photo to determine the date it was photographed.

The only evidence that it was a forged signing date would be Jessica Bacque's statement, claiming she was not interviewed by Federal Agents until 2005 (See Exhibit D, No. 6)

But, if Cox knew he would have raised the motion to compel the Government to provide viewable six packs, after seeing Bacque's signed statement contained a single viewable six pack, which is the same six photo used to ID Cox by Ronisha Jessie, Guadelupe Mendoza, Yolanda Magana, and Brandon Pettuss. This would have shown that the Indictment charging Counts 2, 3, 4, and 5, through only a positive ID in those six packs, were fabricated if Cox's photo was photographed in 2008. Because all the six packs alleged signing dates written on their face as 2005 and 2006 signing dates, Bacque's statement with attached six pack would have allowed Cox to see his photo for the first time and determine that Wolfsen was right it is Cox's photo but it was photographed in 2008. Cox, relied only on Wolfsen's truthful identification that it was Cox's photo in the six packs, in his decision to plead. But within that agreement between Wolfsen and Cox, was, that Cox I can not prove the identifications are falsified He will plead guilty in exchange for McNally dropping those Counts. The plea hinged on Count 2, 3, 4, and 5. Cox, was adamant about false Identifications in 2005 and 2006. Now, Cox get's a chance to represent himself and the District Court denied Cox the opportunity to know the six packs was falified. (See June 30, 2014 Transcript, P. 57 through 70). If, Cox could have seen the six packs he would have discovered before sentencing fabricated evidence. This would have been a fair and just reason to withdraw his plea.

.Was it such a rush that Cox couldn't be sentenced days or weeks later, enough time to allow Cox to obtain the Bacque Statement, and Tracy Spada report. The Bacque statement, would have the viewable six pack, this would have alerted Cox to the perjury committed by Agent Wesley Schwark. Cox, could have compel the Government through discovery requests, and obtained the custodian of record for Cox's Mugshot, and proved that it is a 2008 photo signed in 2005. Certainly the allegations against Cox charged in the Indictment witnessed by Schwark, lose credibility. This Means as testified all evidence prior to 2008, before Schwark was transferred to president security (see Schwark Testimony 6/27/14 P. 74-80).  Therefore with schwark being discredited, there are no allegations prior to 2008. This would mean that Cox only has to disprove Count 23. Cox, contends it was not his vioce on that phone call. This would make it more  likelity than not, the allegations in in Count 2, 3, 4, and 5 influenced Cox's guilty plea, through misrepresentation. Certainly something for a Jury to consider. The Ammo would be incredible, Cox could tell the Jury, they are making up evidence and getting people to lie for them. Because wouldn't it be a lie if the witnesses said that the 2005 and 2006 signing date did identify Cox's 2008 Parole Office mugshot.?

Cox, request for a continuance was denied, therefore he could not discover the photo, and his request to withdraw his guilty plea on 6/30/14, was denied (Tr. Vol. II P. 15). The continuance would have uncovered dark truths about the prosecutions case. The photo, and Bacque's claim that she did not

identify 2 Black males for May 16, 2005, nor did she identify
Cox on May 23, 2005. This would mean that the allegations were
made up. This would be a fair and just reason to withdraw your
guilty plea pursuant to Rule 11. Cox, could have explained his
guilty plea was induced by misrepresentation and threats to
convict Cox on charges that secretly lacked probable cause.

### INEFFECTIVE ASSISTANCE

Perhaps the Government would see it as ineffective assistance
because Wolfsen accepted Bacque's "Blanket Fifth Amendment
assertion not to answer "any question" (see June 27, 2014 Trans.
P. 150, where Bacque asserts a Blanket Fifth). It was Wolfsen's
job to continue but Masker only non-self-incriminating questions.
such as what year were you interviewed by federal agents?

If so, and Wolfsen knew Bacque claims only a meeting in
2009, and speaks of coercion then Wolfsen was required to ask
Bacque the details of her federal interview which would not have
been self incriminating. Asking, who she met at the interview
between Mikkelson and Schwark would have shocked the jurist if
Bacque claims she never met Agent Schwark. Under Ninth Circuit
precedent, the privilege against self incrimination could only
be involked on a question by question basisi. (<u>United States v.
Drollinger</u>, 80 F.3d 389, 392 (9th Cir. 1992).

Questions:

    (1) Is it incriminating to ask Bacque under oath what year
        Bacque: met with federal agents?

    (2) Would it be incriminating to ask Bacque which agent
        seated in the Court she previously met? [Please Note:
        both Mikkelson and Schwark was present].

(3)  Is it incriminating if Bacque was asked if she was
     directed by either officer to circle certain pictures?

(4)  Is it incriminating to ask Bacque if she recognizes
     the agent that told her he would expunge her record
     during her only meeting with federal agents in 2009?

(5)  Would it be incriminating to ask Bacque whether she
     told Agents that she can identify anyone associated
     with her prior conviction for possession of checks?

Answering question (1) claiming that Bacque met with

federal agents in 2009, would invalidate the dates forged on

the six pack. Moreover, it would alarm Cox to hear for the first

time that Bacque never met with agents in 2005, Cox, would have

most likely been compelled to request viewable six pack, which

as Wolfsen testified he had that day (see 6/30/14 Vol. I P. 58).

Answering question (2) claiming she never met Schwark in

2005, but met only Mikkelson in 2009, would show perjury was

committed at the July 28, 2011 suppression hearing. Moreover,

showing Cox that the dates fabricated on the face of the six

pack, would show a fair and just reason to withdraw Cox's

guilty plea. Cox, would have seen the six packs.

Following up asking Bacque which officer present offered to

expunge her criminal record and "circled sertain sections picture"

as Bacque states in her statement, would show which officer

coerced the identification of random six packs.

Cox, received ineffective assistance for failing to ask

Bacque non self-incriminating questions that would expose

perjury and fabricated evidence in order to show a fair

and just reason to withdraw Cox's plea. was induce

### G)   FAILURE TO ENTERTAIN COX'S MOTION
### TO COMPEL THE GOVERNMENT TO GRANT BACQUE
### UDE IMMUNITY ON JUNE 30, 2014

On June 30, 2014 Cox in pro se asked the Court to compel
the Government to grant Jessica Bacque use immunity. The Court
decided that it could not entertain the motion, reciting the
Judge's personal experience as a state judge in California.

The proper steps was to recognize that the Courts do have
that powere in federal court although it does not have authority
to do so in State Court.

By the Court deciding that it does not have the power to
grant use immunity to a witness who directly contradicts a
Government witness that has qualified immunity, the Government
gained a tactical advantage in hiding fabricated evidence.

Cox, asks that this Court revisit it decision not to
entertain Cox's request to grant Jessica Bacque Use Immunity,
seeking the Court to employ the Circuit Precedent procedure
as detailed in United States v Straub, 533 F.3d 1147, 1162
(9th Cir. 2008).

> "The Prosecution granted immunity to a Government witness
> in order to obtain that witnesses testimony, but denied
> immunity to a defense witness whose testimony would have
> directly contradicted that of the Government witness"
> (see Straub)

Cox, contends that Schwark claimed the six pack was signed
in 2005, while Bacque claims she remembers no 2005 interview but
insist that the interview occurred in 2009. "the prosecution
intentionally caused [the witnes] to invoke the Fifth Amendment
privilege against self-incrimination" United States v Miller,
546 Fed Appx. 709 (9th Cir. 2008.

Pg 39



### I)   SENTENCING GUIDELINE ERROR IS
### PLAINLY ILLOGICAL

Cox, argues here that he was sentenced with a guideline calculation of over 50 but under 250 victims. Cox, points out that the Government alleged 500 victims related to $8 million in actual loss. Cox, was sentenced to somewhere around 230 to 240 victims. Cox contends that estimating victims, is not allowed pursuant to §2B1.1(b)(2). Pursuant to ninth Circuit precedent a Court shall not estimate victims. (see United States v Showalter, 569 F.3d 1150 (9th Cir. 2009)

In the Tenth Circuit it held that, "a district court must make independent findings to support its loss calculation and should attempt to connect the number of victims to the loss calculation" (See United States v Holloway, 826 F.3d 1237 (10th Cir. 2016)

Here, the Court knew the Government was alleging 500 victims that connected to the actual loss of $8 million. However it is clear the spreadsheet showed an average of $17,000 per victim which means that by each victim the total actual loss increased. By having less than half the victims Cox should have had a guidline calculation of less than $4 million in actual loss. Then, if the Court would entertain Cox's argument that checks are not access devices, his intended loss should have been $2.3 million. So, if adding $4 million plus $2.3 million into the $6.3 million does not cross the $7 million demarcation to apply the 20 offense levels that were applied for loss. Cox, asks this

Court to revisit its failure to entetain Cox's previous argument
on June 30, 2014, when Cox read the statute definition of access
deviced (June 30, 2014,Trans. Vol. III, P. 20-21 ). He coreectly
argued that check are not access devices. But, the Court failed
to entertain the argument, which was needed to argue that his
Counsel was ineffective for telling Cox that Checks were
access devices prior to his guilty plea. That misrepresentation
on §1029 definition of "Access Devices" allowed the Government
to also threaten to prosecute Cox for possession of "access
device" under §1029, if Cox refused to plead. The Problem is
two-fold:

> **(1) Checks are not access devices and there for there
> was no probable cause to charge Cox with "Access Device"
> counts. Counsels ineffective for not explaining that
> checks can not be charged as access devices.**

> **(2) The Court in failing to remove all the Government's
> alleged loss Calculation which included multiplying
> the number of check orders by $500, caused loss
> calculation error of 20 offense levels as opposed to
> the 18 offense levels that should have benn applied.**

## Loss Calculation Error

During sentencing the Court concluded that it would only use
victims listed in Government Exhibit 15B. Despite the Government
arguing that Cox should be responsible for all the loss and all
the 500 victims. The Court refused to hold Cox responsible for
all the victims, and directed the Government to its intent
to extract all the victims prior to 2009 out of 15B exhibit,
which contained 277 victims in total, explained as a subset of
the 15A exhibit. Government Exhibit 15A, contained 500 victims
and $8.2 million in actual loss and $12.1 million in intended

loss. The subset, 15B contained only a portion of the loss that was in the 15A exhibit. Gov. !5B amounted to $4 million actual loss and $6 million intended.

Cox, argues that If the Court found Cox responsible for 177 victims, do to extracting all victims prior to 2009 out of the 15B exhibit, then Cox's actual loss calculation could not exceed the $4 million dollar actual loss listed in 15B. Keep in mind 15B had 277 victims.

"Access Device Rule 2B1.1 cmt. nt 3(f)(i), Amendment 565"

Cox, contends that his quote above is the Guideline error, which resulted in a miscalculated guideline of 20 offense levels. If the Court found Cox responsible for the loss associated with the 177 victims, then his guideline calculation should have been no more than $4 million in actual loss and $2.3 million in intended loss after extracting the intended loss associated with incorrectly applying Amendment 565 to multiply the number of checks by $500. (See Gove. 15B, attached and note each account name which multiplied $500 per check in each checkbook order. Notice Farnaz Pearl for example, as Cox explained on 6/30/14. (See 6/30/14 Tr. Vol. III P.)23 line 21-25).

**Court failed to address Cox's Argument**
**That Checks are not "access Devices"**

If checks are not access devices as read in the records by Cox in pro se, Then not only is the guideline calculation erroneous, but Cox was also induced by the threat of charging Cox with §1029, which resulted in his involuntary plea.

The Court failed to entertain Cox's argument in pro se.
Cox, wanted a definitive answer whether the Court considered
checks access devices, under §1029. If checks are not access
devices the intended loss amount is dramatically reduced by
removing the following loss amounts from the intended loss
calculation in Exhibit 15B. Removing the following would have
left no more than $2.3 million in intended loss:

```
(1)  Farnaz Perle  3 checkbooks at 150 checks each = $225,000
(2)  Hart G Klein  3 checkbooks at 300 checks each = $450,000
(3)  Michell Hert  1 checkbook  at 150 checks each = $75,000
(4)  J Brookshire  5 checkbooks at 150 checks each = $450,000
(5)  M chavaria    1 checkbook  at 150 checks each = $75,000
(6)  Mark Nye      2 checkbook  at 150 checks each = $150,000
(7)  C Goldberg    2 checkbooks aT 300 checks eavh = $300,000
(8)  D Magnes      1 checkbook  at 150 checks each = $75,000
(9)  D Kaiser      1 checkbook  aat 150 checks each = $75,000
(10) PB Trust      1 checkbook  at 150 checks each = $75,000
(11) S ,orrison    2 checkbooks at 200 checks each = $200,000
(12) D Ratner      2 checkbooks at 150 checks each = $150,000
(13) D Kramer      7 checkbooks at 150 checks each = $525,000
(14) Rosenstein    1 checkbook  at 150 checks each = $75,000
(15) Bergman       1 checkbook  at 150 checks each = $75,000
(16) A Bergman     1 checkbook  at 150 checks each = $75,000
(17) Guy Cohen     1 checkbook  at 150 checks each = $75,000
(18) Bryan herts   2 checkbook  at 150 checks each = $150,000
(19) Fred Smith    1 checkbook  aat 150 checks each = $75,000
(20) Faye Saldon   1 checkbook  at 150 checks each = $75,000
(21) Bruce alder   1 checkbook  at 150 checks each = $75,000
(22) Allen Klein   2 checkbooks at 150 checks each = $150,000
```

**The total intended loss amount for the accounts above were cal**
**calculated by taking the total number of checks for each**
**checkbook order and multplying times $500, Doing so allowed**
**the Government to add a total $3,650,000 to the 15B spreadsheet.**

**Spreadsheet 15B listed $6 million in intended** (see Exhibit 15B,
**attached Exhibit Y)**

Cox argues that if $3.65,million is subtracted from the
$6 million listed in 15B, there remains only #2.35 million.

By adding the toatal actual loss of $4 million plus the
remaining $2.35 million for intended loss it equals $6.35 million,
and $6.35 million would fail to reach the $7 million for 20 offense

levels. The ultimate issue is that again not only did the prosecutor threaten to charge Cox with §1029, by defining checks as access devices, it failed to correctly subtract the $3.65 million from the guideline calculation in 15B.

### J)   THE AMOUNT OF VICTIMS MUST BE COMMENSURATE WITH THE LOSS AMOUNT

By choosing only to take victims from the 15B spreadsheet, and reducing the victims from 500 to 177 the Court was required to logically calculate the loss. Cox, points out that his guideline range came to 37 offense levels level 6 Crim Hist., minus 3 levels for acceptance of responsibility. This left the Court with 34 offense levels, however, subtracting the access device calculation 2B1.1 cmt nt 3(f)(i), $500 per access device, leaves the correct calculation at $6.35 million and drops 2 offense levels.being under $7 million. The difference is his range should have been 210-to 262 months rather than the 262 to 327 that were applied. (Molina-Martinez v United States, 136 S.Ct. 1336, 1345 (2016).

> "When a defendant is sentenced under an incorrect guideline range-whether or not the defendant's ultimate sentence falls within the correct range the error itself can, and most often will, be sufficient to show a reasonable probability of a deferent outcome absent the error" (see Molina-Martinez)

> "A District Court must make independent findings to support it's loss calculation and should attempt to connect the number of victims to the loss calculation" United States v. Holloway, 826 F.3d 1237 (10th Cir. 2016)

Cox, contends that the loss associated with over 4 million in actual loss was associated with ghost victims. In other wprds those extra losses had no victim associated with Cox's conduct. It was absolutely clear that the Court chose only to find 177 victims

using the 15B spreadsheet that had some connection to Cox.
(See 6/30/14 Vol. III P. 22-30 6/26/14 Trans. P. 7) where the
Government clarifies that the loss showing 277 victims had
also only $4 million in actual loss. Cox, contends loss is equal in
limiting the victims to only the 15B spreadsheet.  Court stated:

> "concerning Mr. Cox alone, just his activities, you have
> accounted for 277 victims --"

McNally:

> "Correct"

Court

> "-- linked to Mr. Cox solely, or in conjunction with others
> from April 7th 2005, to February 16th 2011."

The significance of the two spreadsheets showing we have the
Court clearly telling AMr AUSA McNally, stating that it will
take the victims calculation out of the 15B spreadsheet.

If the Court used 15B spreadsheet to determine the victims
associated with Cox's participation and agreement with others
then it must also use 15B spreadsheat for actual and intended
loss assocaited with Cox's conduct. By correctly using 15B,
and subtracting the "$500 per check", the calculation could
not reach $7 million.

> **THE CIVIL COURT IN CASE NUMBER**
> **8:16-CV-01222-CJC-KES EXPLAINED THAT**
> **it believed that Cox did not get charged with**
> **anything prior to 2009, as a reason to state**
> **cox did not suffer prejudice to file civil suit**

"plaintiff was only charged with and only pled guilty to acts
that occurred in or after 2009, long after Mr. Bacque's
involvement" (See 8:16-cv-0122 Dkt 159 P. 29).

Pg 45

Cox, argues that his relevant conduct was based on a single allegation that Cox and co-defendant Brown, formed the initial agreement "sometime in 2005" (see 11/28/2012 P. 29, line 4-8).

But, the problem is that this allegation of a meeting of min minds sufficient enough to allege that Cox and Brown form the conspiracy, is one single Count, and Overt act. Count One overt Act 1, was the only allegation showing a meeting of minds between Cox, and Brown. Count 2, repeated that allegation, but without it Cox, and Brown don't form an agreement to began the Conspiracy and there was no other evidence heard by the Court but that single overt act. The Court however removed the Bacque allegation and with it should have went the only 2005 agreement with Brown, therefore starting Cox's first agreement in 2009.

Cox, was in prison nearly the entire 2006 through 2008, and if an agreement was not formed prior to 2006, Cox's participation starts in 2009. By starting his participation in 2009, the Court could give Cox no more than $4 million in actual loss and $2.65 million in intended. Such would kill a 20 offense level for loss finding. Minus 2 offense level from 34 *would* be 210 to 262 and could not reach the 300 months by adding 24 months §1028A. Error, would be shown, this *court* ~~could~~ must look to the 2010 Guideline and see. (See Exhibit Q Cox's prison inmate transfer report). The Government needed Bacque, because she is the link to the only agreemnent. Cox, seeks resentencing, using 210 to 262 month guideline range. *(see EXHIBIT Q)*

Pg 46

G-

~~ARGUMENT NUMBER 2~~

**Argument  J)**

<u>Rule 32 Violation</u>

Defendants have no constitutional right to allocution,
however, Congress has codified it as law, making it a legal
obligation to the courts, to pause proceeding prior to
sentencing and allow the defendant to speak or <u>present any
information in mitigation</u>. Cox, argues that his right to
allocution was denied, and his appellate Counsel Jennifer
Coon was ineffective for failing to raise this claim on
direct appeal.

Cox, contends that his Rule 32 Violation identically
mimics the facts surrounding the ruling in <u>United States v
Chapman</u>, 915 F.3d 139 (3rd Cir. 2018). This is a statutory
violation of Fed. R. Crim. P. 32(i)(4)(A)(ii).

In <u>Chapman</u>, the argument was that the Court failed to grant
grant a continuance so as to allow Chapman to submit family
letters. The District Court denied the request, and was later
reversed due to the rule 32 violation. It was held that
the Court may not prevent a defendant from presenting any
information in mitigation.at allocution. It found that the
denial of the continuance violated Rule 32(i)(4)(ii).

Cox, argues that the samething happened to him. He
appeared pro se after discussing ineffective assistance and
his need to self representation the prior day. Cox, was granted
his right to proceed pro se.on 6/30/14. The next day Court

scheduled sentencing. before proceeding with pro se however,
the Court made Attorney Thomas Wolfsen stay on as standby
counsel. Wolfsen maintained possession of all defense files
and exhibits. On June 1, 2014, at sentencing Cox made a request
to read a page out of his recently finished book called
"choosing a career". õutwof a series of books that Cox had
written and self published called "Anti-Crime Education".
This was Cox's planned and scripted allocution. The single
page in the book detailed Cox's dreams and understanding of
international trade and High Heel Shoe designing.

    Cox, wanted this as his allocution, his knowledge and effort
at rehabilitation. Cox, was not a shoe designer prior to his
arrest, but learned that he could be a shoe designer and engage
in international trade using Chinese Manufacturers. This single
page detailed his plan and related to an important §3553(a) factors
which is, the need for rehabilitation, and to protect the public.
The history and characteristics of the defendant is a important
§3553(a) factor. Cox, argues that his allocution detailing his fu
future plan, show that he intended to design shoes, such conduct
would show that there is no need to protect the public. It would
show that a multiple financial crime felon wants to change.
show that a career fraudster

    Yes, it is possible for people to change without 25 years
in prison. Remembering Cox, has never done a year straight in
prison. Ten years later, Cox makes good on his goal to be a
shoe designer. This would show that what he wrote in his book
was the truth. Against-all-odds, Cox figured out a way to
make prototype shoes out of prison popsicle sticks, glue and
sand paper.

Cox, should have been allowed to read that single page, and the unexplained urgency to proceed does not out weigh a defendants right to allocution. It does not allow a denial of Cox's statutory right to present any information in mitigation. It would be mitigating if a career financial crime defendant has discovered an honest way to make a living, This is the essence of rehabilitation.

Cox, shows extrordinary efforts at rehabilitation. Cox, explains that the Federal Bureau of Prisons, do not offer a shoe making or design class. Cox was creative, however, because he figured out how to glue popsicle sticks together, cut shapes, sand then paint the prototype, and cover the designs in hardened floor wax. The process makes the shoes look plastic. The prison offers a purse making leather class so Cox was given the chance to attach leather to his designs. Cox, completed over 30 designs, (see Exhibit Z, pictures of prototype made of popsicle sticks).

It goes to say that his single page, spoke of the future, yet was never heard because the Court did not want the inconvenience of postponing half an hour. (see Exhibit X) Cox's declaration regarding his book and making shoes).

We can see 6 years later, Cox has a chinese Manufacture, reproducing his prototypes (See Exhbit W, Chinese made remake of Cox's "Savage Butterfly Shoe"). Cox, has filed a trademark called "L7HER", which goes to show that he is more than serious. Cox, contends that if he could have read that single page, the court may have lowered his sentence. Cox, was denied the right

to present any information in mitigation, when the Court said:

> "This is the time for allocution. It's the time for you to tell me how you feel in your words --"

> "So if you want to tell me about your thoughts and feelings, so be it. And you can tell me about those thoughts and feeling just as easy as presenting a book to me, in my opinion, and if you wrote something in the book --"

Mr. Cox:   "I could -- I could try."

Court: You "You could paraphase it. But as far as the Court looking a book you wrote and being persuasive, I'd just as soon hear what you have to say as a human being." (See July 1, 2014 Transcript P. 7)

The Court unjustifiably limited Cox's allocution to a

*SPEECH*

unscripted improv, denying Cox the right to present any info

information he thinks will mitigate his sentence. Cox, was

trying to detail his plan and name the factory in China that

he plans to have produce his shoe designs. Cox, was not lying

or faking to mitigate his sentence he was trying to show the

Court he has changed. But, six years later after 10 years in

prison Cox is still actively trying to produce his own shoe

line. By the Court denying Cox the right to allocution it

*REHABILITATION*

never learned of Cox's financial support plans. No

Now, after so many years Cox presents evidence that he

has become a shoe designer with a website called Prettyazzheels.com.

See Cox's site and how he sells shoes on his website. Cox, has

changed and the Court would have noticed this if it would have

allowed Cox to read one page out of his book. Cox, respectfully

request remand for Rule 32 violation, citing ineffective

assistance for Appellate Counsel Jennifer Coon failing to raise it.

Cox, seeks a remand, after vacating his conviction. Cox, seeks to vacate his sentence as substantively unreasonable in violation of Rule 32, and Molina-Martinez.


Respectfully submitted,


_____ Date __10-5-2020__

# Certificate of Service

I, _Lewellyn Cox_ hereby certify that I have served a true and correct copy of the following by placement in the inmate mail:

(1) FIRST 2255

(2) AND MOTION FOR ADDITIONAL PAGES

(3) 2255 EXHIBITS

Service of process is deemed complete at the time of delivery to the United States Postal Service for forwarding to the Court. **Houston v. Lack** 101 L.Ed.2d 245 (1988) confirms that by such service upon the parties to litigation and or his/her attorney of record, by placement in a sealed, postage prepaid envelope addressed to:

U.S ATTORNEY
411 W. FOURTH ST
SANTA ANA CA 92

and deposited in the United States Mail maintained by the United States Penitentiary Lompoc; Lompoc, California; all requirements of service of process required by law have been fulfilled this:

_5 TH_ day of _OCTOBER_ 20 _20_

United States Penitentiary
3901 Klein Boulevard
Lompoc, CA 93436-2706

(Name) _____

_48963 -112_

Bureau of Prisons Register
Number



LEWELLYN COX
Reg # 48963-112
FCC-BEAUMONT-LOW
P.O. BOX 26020
BEAUMONT TX 77720

RECEIVED
CLERK, U.S. DISTRICT COURT

OCT 22 2020

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION     BY DEPUTY

DOC

UNITED STATE DISTRICT COURT

411 W. FOURTH ST

SANTA ANA, CA 92701

LEGAL MAIL