THE JUSTICE FIRM
Joseph Virgilio, Esq. (SBN: 139376)
5850 Canoga Avenue, 4th Floor
Woodland Hills, California 91367
Telephone: (310) 914-2444

DARDEN LAW GROUP APC
Christopher Darden, Esq (SBN: 94959)
11500 West Olympic Boulevard, Suite 400
Los Angeles, CA 90064
Telephone: (310) 654-3369

Attorneys for: Lewellyn Cox
Defendant

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>vs.<br><br>LEWELLEN COX<br><br>Defendant. | Case No.: 8:20-CV-02064-DOC<br>SA CR 09-248-DOC<br>CV 20-2064-DOC<br><br>DEFENDANT LEWELLYN COX'S<br>REPLY TO PLAINTIFF'S OPPOSITION<br>TO DEFENDANT'S MOTION FOR<br>RELIEF PURSUANT TO 28 U.S.C. §<br>2255 |

Defendant Lewellen Cox, by and through his attorneys of record, Joseph Virgilio

and Christopher Darden hereby files his Reply in support of his motion to vacate his

conviction and/or sentence pursuant to 28 U.S.C. § 2255.

DATED:

THE JUSTICE FIRM

By _Joseph a. Virgilio_
Joseph Virgilio, Esq.
Attorney for Defendant
Lewellen Cox

DEFENDANT COX'S REPLY - 1

1   DATED: 9/2/2021

2

3                                          DARDEN LAW GROUP APC

4                                          By

5                                             Christopher Darden, Esq.
                                             Attorney for Defendant
6                                             Lewellen Cox

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

Page

I.     INTRODUCTION                                                                          5

II.    ARGUMENT                                                                              6

       A.    The "Six-Pack" Photographs                                                      6

       B.    Other Photographic Evidence                                                     8

       C.    Bacque Interview and Testimony                                                  9

III.   THE COURT FAILED TO PERMIT COX TO MEANINGFULLY                                       10
       ALLOCUTE

       A.    The Right to Allocution is a Substantial Fundamental Right                     10

       B.    Allocution Serves a Critical Three-Fold Purpose                                11

       C.    The Court Unfairly Limited Defendant's Right to Allocute                       12

IV.    PETITIONER SHOULD HAVE RECEIVED A LESSER SENTENCE                                    12
       BECAUSE THE LOSS CALCULATION, NUMBER OF VICTIMS
       AND MONETARY LOSS WAS INACCURATE

V.     CONCLUSION                                                                           19

       Proof of Service                                                                     21

# TABLE OF AUTHORITIES

Page

**CASES**

Bordenkircher v. Hayes, 434 U.S. 357 (1978)                                    19

Green v. United States, 365 U.S. 301 (1961)                                    10, 11

Molina-Martinez v. United States, 136 S. Ct. 1338 (2016)                       18

State v. Sinclair, 301 N.C. 193 (1980)                                         19

United States v. Adams, 252 F.3d 276 (3d Cir. 2001)                            10, 11

United States v. Alexander, 725 F.3d 1117 (9th Cir. 2013)                      17

United States v. Chapman 915 F.3d 139 (3d Cir. 2019)                           5, 10,
                                                                               11, 12
United States v. De Alba Pagan, 33 F.3d 125 (1st Cir. 1994)                    12

United States v. Jarvi, 537 F.3d 1256 (10th Cir. 2008)                         11

United States v. Lee, 725 F.3d 1159 (9th Cir. 2013)                            17

United States v. Lloyd, 807 F.3d 1128, 142 (9th Cir. 2014)                     17

United States v. Paladino, 769 F.3d 197, 202 (3d Cir. 2014)                    10

United States v. Plotts, 359 F.3d 247, 250 (3d Cir. 2004)                      10

United States v. Showalter, 569 F.3d 1150 (9th Cir. 2009)                      17

United States v. Ward, 732 F.3d 175, 181 (3d Cir. 2013)                        11

**CODES**

18 U.S. Code Section 1029(e)(1)                                                6, 18

**RULES**

Federal Rule of Criminal Procedure 32                                          10
Federal Rule of Criminal Procedure 32(i)(4)(A)(ii)                             11

I.

## INTRODUCTION

Petitioner/Defendant Lewellen Cox entered a guilty plea based upon incorrect and false statements given to him by his then attorney and the prosecuting attorneys.

Petitioner rejected a more favorable plea offer from the Government on advice from his then attorney Thomas Wolfsen, who incorrectly informed Cox on or about December 10, 2011 that he could not bring new evidence showing he was influenced to plead guilty, by showing the Government charging counts based on fabricated evidence, if he signed the plea offer.  Wolfsen stated that contract law would prohibit such a claim. (See Cox's Amended Addition to Cox's 2255, filed February 8, 2021; Exhibit A-10.)

The fabricated evidence centers on a faulty six-pack photograph identification supposedly physically signed by Jessica Bacque and others in 2005.  The photograph of Petitioner in that six-pack was not taken until 2008.  (See Petitioner's underlying 2255 Motion, filed October 22, 2020, page 2).

The Government failed to initially provide Petitioner with a "legible" copy of the six-pack.  All of the individuals were unidentifiable.  Petitioner's attorney purportedly was shown a clean/legible copy of the photographs, but repeatedly refused to obtain and show Petitioner a legible copy of the six-pack photos.

Petitioner was also denied the right to allocute, a substantial right deemed fundamental pursuant to United States vs. Chapman 915 F.3d 139 (3d Cir. 2019).

In addition, Petitioner was given an excessive sentence as a matter of law.  The sentencing guidelines were incorrectly applied, particularly as to 18 U.S. Code Section 1029(e)(1) which specifically excludes "paper checks" from being considered "access devices".

II.

ARGUMENT

Although Petitioner's complete list of acts constituting ineffective assistance of counsel are listed in Petitioner's original Motion, there are glaring errors by then defense counsel Wolfsen which the Government has failed to refute.

A.    The "Six-Pack" Photographs

The Opposition contends that defense counsel "challenged the six-pack identifications that defendant claimed were flawed and the court ultimately resolved the issue by not relying on them in imposing sentence" (p. 5, lines 23 – 25).  The Opposition adds that "Defendant did not plead guilty to a count charged based on the Bacque identification and the Court excluded loss amounts linked to Bacque at sentencing".

Counts 2, 3, 4, 5 and 7 against Defendant were based entirely upon the six-pack photo arrays.  The Opposition's argument that the six-pack photos are irrelevant as they were not used as part of Defendant's sentencing – misses the point.

Cox argues that the photo used in the six-pack array was from a 2008 mugshot and therefore could not have been used in the earlier proceedings to identify him.  Witnesses

could not have identified him from a photo which did not exist. (See Opening Brief, page 11, first paragraph).

On July 28, 2011 there was a suppression hearing regarding the six-packs. Prior to that hearing, Petitioner's attorney should have obtained a legible copy of the photographs. Had Petitioner been able to view the six-pack earlier, he would have known that his 2008 photo could not have been shown to five separate witnesses in 2005 or 2006, and that the six-pack was a "manufactured" exhibit. Petitioner has repeatedly asked the Government for access to the original six-pack exhibit so as to be able to prove that the picture of him was taken in 2008, but the Government has denied Petitioner access to the original exhibit, this despite official repeated requests and requests pursuant to the Freedom of Information Act.

Petitioner was not shown a viable copy of the six-pack photographs until after Petitioner plead guilty on June 27, 2014 (Note – the original Petition erroneously stated 2011, not 2014). Prior attorney Wolfsen's failure to obtain and show Petitioner a legible copy of the six-packs resulted in Petitioner not being aware, until too late, that the six-pack was fabricated.

Tellingly, Wolfsen refused to entertain the issue of contesting the validity of the six-pack photographs. When questioned Wolfsen's response was "it's you in the picture. I'm not going to argue that it isn't you, so you don't need to see the six packs". (Opening Brief, page 6).

Attorney Wolfsen's failure to file a motion to compel the Government to produce viewable copies of the six-pack photographs prior to the July 28, 2011 suppression hearing was one of several instances demonstrating his ineffective assistance as Petitioner's counsel.

Had the validity of the identification process been questioned, it is probable that Petitioner would have prevailed at the suppression hearing.  Without a valid identification, Counts 2 through 5 (being based on the six-pack identification) would have been dismissed.

B.    Other Photographic Evidence

Count 3 of the charges against Petitioner were predicated on photographic evidence allegedly implicating Petitioner in a criminal enterprise.  Specifically, it was alleged that on May 23, 2005, Petitioner was photographed in a blue green Jaguar passing a check to Bacque.  This same day Bacque was arrested for cashing a stolen check. (Opening Brief, page 9).

Attorney Wolfsen never raised the issue (or bothered to inform Petitioner) that Petitioner could not have been in that photograph, as on May 23, 2005 he was incarcerated in the Los Angeles County Jail.  Simple research would have revealed that Petitioner was in the County Jail from May 22, 2005 to June 8, 2005.

Attorney Wolfsen's negligence in failing to advise Petitioner as to the impossibility associated with the charges contained in Count 3 lead Petitioner to plead guilty to events which predated any of his involvement regarding illegal check cashing.

C.      Bacque Interview and Testimony

Jessica Bacque's testimony regarding "seeing" Petitioner in May of 2005 would have been entirely discredited once it was established that Petitioner was in jail throughout May of 2005.

Had Attorney Wolfsen presented evidence that Bacque could not identify the passengers of the bluish green Jaguar on May 23, 2005, it would have severely contradicted the Government's testimony that it had obtained a positive identification of Petitioner by Bacque herself.  This testimony would likely have resulted in Petitioner prevailing at the suppression hearing.  Had Petitioner prevailed at that hearing, the Court would have dismissed Counts 2 and 3 from being charged against Petitioner. (Opening Brief, pages 3 and 9).

During the trial, Attorney Wolfsen failed to ask Bacque questions regarding the validity of her purported November 2, 2005 signature on the six-pack used to identify Petitioner.  Wolfsen failed to question Bacque on the stand as to why she had told him that she had not been interviewed by Agent Schwark (or anyone else) until 2009.  It was not until June 20, 2014 that Wolfsen informed the Court, and Petitioner, that he lost the Bacque statement which spelled out the actual date (in 2009) that Bacque was interviewed (TR, Vol. I, pages 58 – 61).

If the Schwark testimony is compromised, then the allegations supporting Counts 2, 3, 4, and 5 must be called into question.  If the six-pack dates are falsified, then Agent Schwark was not truthful when he testified that Bacque was interviewed and signed the

six-pack photographs in 2005. Petitioner's guilty plea was predicated on fabricated

evidence and testimony.

### III.

### THE COURT FAILED TO PERMIT COX TO MEANINGFULLY ALLOCUTE

A.      The Right to Allocution is A Substantial Fundamental Right.

United States v. Chapman, 915 F.3d 139 (3d Cir. 2019)

While not constitutionally protected, **the right to allocution is deemed a**

**substantial right because it could influence a court's sentencing decision.** United

States v. Paladino, 769 F.3d 197, 202 (3d Cir. 2014); United States v. Plotts, 359 F.3d

247, 250 (3d Cir. 2004). Allocution is "ancient in origin, and it is the type of important

safeguard that helps assure the fairness, and hence, legitimacy, of the sentencing

process." Id. (quoting United States v. Adams, 252 F.3d at 288). While defendants have

been granted additional rights and procedural safeguards over time, "[n]one of these

modern innovations lessens the need for the defendant, personally, to have the

opportunity to present to the court his plea in mitigation." Paladino, 769 F.3d at 200

(quoting Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)

(plurality opinion)). The Supreme Court in Green recognized that "[t]he most persuasive

counsel may not be able to speak for a defendant as the defendant might, with halting

eloquence, speak for himself." Green, 365 U.S. at 304, 81 S.Ct. 653.  Congress codified

the right to allocution in 1944 by promulgating Federal Rule of Criminal Procedure 32,

which instructs that "before imposing sentence, the court must ... address defendant

personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii); United States v. Ward, 732 F.3d 175, 181 (3d Cir. 2013) (citing Adams, 252 F.3d at 280, and Green, 365 U.S. at 304, 81 S.Ct. 653). (Emphasis added) Chapman, 145.

B.     Allocution Serves a Critical Three-Fold Purpose

The Chapman court recognized the fundamental necessity for fairness in providing a defendant the opportunity to be heard before sentencing.

This Court has determined that the "critical purpose" of allocution is threefold: "1) to allow the defendant to present mitigating circumstances, 2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system." Ward, 732 F.3d at 181. When the purpose served by allocution is compromised, prejudice against the defendant is presumed and a re-sentencing is warranted. Adams, 252 F.3d at 281.  Information that could potentially mitigate a sentence draws from a wide range of sources. Accordingly, Rule 32 grants a defendant the broad right to present "any" material he believes might appeal to the court's compassion. When a court unjustifiably limits a defendant's ability to introduce information he reasonably believes is "the best case for mitigating the sentence," the purpose underlying allocution is thwarted. United States v. Jarvi, 537 F.3d 1256, 1262 (10th Cir. 2008). Moreover, unduly limiting allocution compromises a court's own ability to sentence the individual standing before it and to "temper punishment with mercy in appropriate cases." United States v. Ward, 732

F.3d 175, 181 (3d Cir. 2013) (quoting United States v. De Alba Pagan, 33 F.3d 125, 129

(1st Cir. 1994)). Given that an inclusive allocution better informs the sentencing decision,

a court should encourage a defendant to present all available relevant and illuminating

information. Chapman, 145.

C.      The Court Unfairly Limited Defendant's Right to Allocute

        On June 1, 2014, at sentencing Cox made a request to read a page out of his

recently finished book called "choosing a career". This was Cox's planned and scripted

allocution. The single page in the book detailed Cox's dreams and understanding of

international trade and High Heel Shoe Designing. More importantly, the text outlined

his knowledge and effort at rehabilitation.

        As outlined in Cox's original and supplemental Motions, and never refuted by the

Government, the critical purpose of allocution in Cox's case was never heard because the

Court did not want the inconvenience of postponing the hearing for half an hour so that

Cox could obtain his materials.

IV.

PETITIONER SHOULD HAVE RECEIVED A LESSER SENTENCE BECAUSE THE

LOSS CALCULATION, NUMBER OF VICTIMS AND MONETARY LOSS WAS

INACCURATE

        On July 26, 2014 the Government presented the argument that Cox was

responsible for losses as to 490 victims, and those losses resulted in an "actual or known

loss of over 8 million". (See 6/26/2014 Transcript, Vol. I, page 7, lines 6 through 9).

The Court: "So of the 490 victims from April 7, 2005, to February 16, 2011, you have an actual or intended loss of over $8 million."

AUSA McNally: "Correct".

Prior to this unsupported conclusion that there were 490 victims who suffered a known or actual loss of $8 million, the Government made it clear that their loss calculation was made "essentially by victim" (See Transcript 6/26/2014 Vol. I Page 5, line 3 through 12). Quote:

AUSA McNally: "... we've organized the loss essentially by victim"

The Court: "by?" AUSA McNally: "By Victim"

The Court: "By victim?" AUSA McNally: "by Victim"

The Court: "Thank you."

The crux of Petitioner's argument is that his Appellate Counsel, Jennifer Coon, failed to argue that the relevant conduct finding for loss failed to match the relevant conduct finding for victims, which resulted in a "2 offense level" increase error in the Guidelines 2B1,1(b)(1).

Petitioner Cox fired his trial counsel, Thomas Wolfsen, on June 30, 2014, and proceeded pro se, preserving the argument itself that there was a glaring error in the Government's claimed 490 victims. Quote:

Mr. Cox: "See, see the problem with Jessica Bacque, her check, she establishes the beginning agreement that establishes that this conspiracy began 2005. See, the problem with me is, without those "Schwark" acts, I don't show up until 2009. I don't

*have an overt act that shows up. And see, under the commonality of time in a conspiracy the overt acts determine the time span."*

*The Court: And if you show up in 2009. of the 277 **INSTANCES** [emphasis added] that the Government alleges that you were involved in, how many of those would be negated?" (See 6/30/2014 Trans. Vol. I page 68)*

The Government disagreed and argued that Cox should be responsible for all of the victims associated with the entire conspiracy, which in turn holds Cox responsible for the entire $8 million in actual loss associated with 490 victims.

*AUSA McNally: "We can count--it's actually of the 490 from the conspiracy."*

*The Court: "No. The question is, as of 2009. Your figures start on April 7, 2005, if you look at Exhibit No. 15 my question is simple.".*

*"Given Mr. Cox's best position, as we understand, you know, where we're at in this hearing, of the 277 **Instances** [emphasis added], how many would drop?' (See 6/30/2014 Vol. I page 69).*

AUSA McNally began to argue that it should be 147 less than "490". Page 69 line 2). The Court refused to apply the reduction. The Court ultimately made the finding by "clear and convincing evidence" that Cox should be held to no more than "177" victims/instances. The Court concluded that Cox's participation amounted to Quote:

*The Court: "It would be a minimum of intended loss of $6 million, at a minimum. And at least a minimum of 3-point -- million or above, that I can't quite determine, because I'm a little concerned about Bacque and take Mr. Cox's position. I'm just not*

*confident that it's somewhat below $4 million. It's just impossible to determine. I would make that finding by clear and convincing in case it was sent back to me." (See 6/30/2014 Vol. III P. 30 line 1 through 5)*

*"Now, here's my concern. And it concerns the 2B1.1 (b) (2) (c). And that's the 500 victims account owners. And part of that relate NOT to the amounts that I have clear and convincing standard that I've met, but here I'm uncomfortable with the time he's in prison" (6/30/1.4 Vol. III P. 30 line 6 through 10).*

In making that statement the Court found that the $4 million loss could not relate to 500 victims. The Court considered Cox's argument that the Jessica Bacque testimony contradicted the Government's claim that she identified Cox's mugshot on "11/02/05". And because Cox argued that Bacque was the only allegation alleging a pre-2009 agreement with any ongoing conspirator, and Cox argued that it should be removed, the Court agreed. It limited actual loss to Government Exhibit 15B, minus any pre 2009 allegation.

Ultimately, the Court found "177" victims.

*The Court: "Whether it's Bacque, who I didn't hear the entire testimony about, whether it's the fact he was in prison for a period of time. The one thing I'm absolutely convinced of is his own statement that minimally, even if he discounted 79, we're down to 177" (6/30/14 Trans. Vol. III P. 30 line 15 through 19).*

Petitioner contends that the Government is wrong in its broad interpretation of the Court's findings, and that the Court specifically limited victims and loss to $3.5 million in

actual loss and $5.7 million in intended loss. Combined actual and intended loss was just over $9 million, associated with 177 victims.

The Court's intended loss calculation was in error.

Petitioner contends that the intended loss error should have resulted in 18 offense levels, not 20.

By correcting this error, the sentencing guideline range will fall from 34 offense levels to 32 offense levels. By dropping to 32 offense levels, the Sentencing Table renders 210 to 262 months which makes the Court's 276-month guideline sentence outside the range.

The Court found $5.7 million intended loss added to $3.5 million actual loss which crossed the $7 million demarcation to apply 20 offense levels. However, as Cox correctly argued in his Opening Brief, the intended loss was in error. The reason for this is that checks are not "access devices". The "additional" $3 million was applied in error and the true finding should have been $6.2 million dollars. This number would not reach the 2014 guideline demarcation to apply 20 offense levels which required an actual and intended loss of over $7 million. Because $6.2 million does not reach $7 million the Court should have only applied 18 offense levels.

As previously cited in his Opening Brief, 2B1.1 Application Note 3(F)(I), holds a defendant responsible for $500 per access device possessed by the defendant. The Government claimed that $7.4 million in "intended loss" should be added to the entire conspiracy in the Government's Spreadsheet, Exhibit 15A. In Government Exhibit 15B,

the one the Court found Cox had participated in, the Government added $3 million in intended loss by defining "checks" as "access devices". The Court erroneously applied that 3 million in error. Checks are not access devices. The Government has made no argument to rebut Cox's citation of caselaw excluding checks from the ambit of the definition of "access device". By checks being excluded, the Court could not apply application note 3(F) (i), and apply $500 per check to add $3 million intended loss to cross the $7 million demarcation to apply the 20 offense levels. For this reason, the guideline range should fall to 32 offense levels in total (rather than the 34 offense levels used at sentencing) to arrive at 276 months.

"The Court must make individualized findings about the scope of the criminal activity the particular defendant agreed to jointly undertake". See United States v. Lloyd, 807 F.3d 1128, 142 (9th Cir. 2014). "The Guidelines do not, however, allow a district court to estimate the number of victims to enhance a sentence under Section 281.1(b) (2)" United States v Showalter, 569 F.3d 1150 (9th Cir. 2009).

"A Court may not manipulate the calculation under the sentencing guideline in order to produce a guideline range that will allow it to impose the sentence it prefers." United States v Lee, 725 F.3d 1159 (9th Cir. 2013).

Checks are not "access devices", and the Court applied $3 million plus in error.

"Congress knows how to exclude Paper instrument transfers from the ambit of a criminal statute, they did so in 1984 when they defined 'access device' as part of the credit Card Fraud Act" United States v Alexander, 725 F.3d 1117 (9th Cir. 2013).

18 U.S. Code § 1029(e)(1) states:

"The term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)"

18 U.S. Code § 1029(e)(1) specifically excludes "paper" checks from being considered access devices. As such, the sentencing guidelines were incorrectly applied to Petitioner, resulting in an excessive sentence as a matter of law.

"When a defendant is sentenced under an incorrect guideline range-whether or not the defendant's ultimate sentence falls within the correct range-the error itself can, and most often will be sufficient to show a reasonable probability of a different outcome absent the error" See Molina-Martinez v. United States, 136 S.Ct. 1358, 1345, 195 L. Ed. 20 444 (2016).

The issue of access devices is relevant for a related reason. While negotiations regarding plea agreements are permissible, the Government is not permitted to threaten a defendant knowing that the additional threatened count of misconduct was not illegal at all. The Government should not have threatened Defendant with fictitious violations of 18 U.S. Code §1029 during plea agreement negotiations while knowing there was no legal basis for doing so.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see <u>North Carolina v. Pearce</u>, supra at 397 U. S. 738 (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." <u>Chaffin v. Stynchcombe</u>, supra at 412 U. S. 32-33, n. 20. See <u>United States v. Jackson</u>, 390 U. S. 570." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978)

The <u>Bordenkircher</u> case protects against the Government threatening to add causes of action for which there is no probable cause during plea bargain negotiations.

"A plea of guilty or no contest involves the waiver of various fundamental rights such as the privilege against self-incrimination, the right of confrontation and the right to trial by jury. Our legislature has sought to [e]nsure that such pleas are entered into voluntarily and as a product of informed choice." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978); See also <u>State v. Sinclair</u>, 301 N.C. 193, 197 (1980).  The Government's Opposition has not refuted Petitioner's claim of prosecutorial misconduct regarding the plea negotiations.

///

///

///

///

///

///

V.

## CONCLUSION

For all of the reasons stated above, Defendant Lewellen Cox is entitled to have his conviction overturned, or in the alternative, he is entitled to a resentencing hearing.

DATED:

THE JUSTICE FIRM

By _Joseph A. Virgilio_
Joseph Virgilio, Esq.
Attorney for Defendant
Lewellen Cox

DATED: 9/2/2021

DARDEN LAW GROUP APC

By _Christopher Darden_
Christopher Darden, Esq.
Attorney for Defendant
Lewellen Cox

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I am employed in the county of Los Angeles, State of California. I am over the age
       of eighteen and not a party to this litigation. My business address is 5850 Canoga Avenue,
4      4th Floor, Woodland Hills, California 91367

5      On _September 5, 2021_, I served the foregoing document described below as **REPLY
       TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF**
6      **PURSUANT TO 28 U.S.C. § 2255** on the interested parties to this action:

7

8      [   ]   (BY PERSONAL SERVICE) I delivered such envelope by hand to counsel for the
               parties as set forth below:

9

10     [X]    (BY MAIL) I placed a true and correct copy of the above document in an envelope,
               postage prepaid, first-class to the address below:

11

12           United States Attorney's Office        Telephone: (213) 894-2272
             Central District of California          Facsimile: (213) 894-2500
13           312 North Spring Street                 Email: joseph.mcnally@usdoj.gov
             Los Angeles, California 90012
14           Attn:  Joseph T. McNally, Esq.
                    Assistant U.S. Attorney

15

16     [X]    (VIA ELECTRONIC MAIL) I transmitted a true and correct copy of the above
               document via electronic mail to the address below:

17

18     [   ]   (BY EXPRESS MAIL COURIER) I placed a true and correct copy of the above
               document in an envelope, postage prepaid, and deposited the envelope in a box
19             regularly maintained by the courier for overnight delivery:

20     [   ]   (BY TELECOPIER TRANSMISSION) I transmitted said document via telecopier
               transmission (FAX) to counsel for the party set forth above.

21

22     [XX]   (State)  I declare under penalty of perjury pursuant to the laws of the State of
               California that the above is true and correct.

23

24     _David Robinson_                             _____
       (Type or print name)                          Signature

25

26

---

DEFENDANT COX'S REPLY  - 21