

FILED
CLERK, U.S. DISTRICT COURT

SEP - 8 2022

CENTRAL DISTRICT OF C...
BY _____

IN THE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

LEWELLYN CHARLES COX IV,

        Petitioner,

      v.

UNITED STATES OF AMERICA,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Criminal No. SA-09-CR-000248-DOC

Civil No. SA-20-CV-02064-DOC

The Honorable Judge, David O. Carter, Presiding.

---

**LEWELLYN CHARLES COX IV MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT IN RELATION TO HIS MOTION TO VACATE, CORRECT, OR SET ASIDE SENTENCE UNDER 28 U.S.C. §2255**

---

Lewellyn Charles Cox IV, Pro Se
Fed. Reg. No. 48963-112
FCC Beaumont Low
P.O. BOX 26020
Beaumont, Texas 77720

TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . ii

II.   STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . 1

III.  APPLICABLE STANDARD OF REVIEW . . . . . . . . . . . . . . 10

IV.   BASIS FOR RECONSIDERATION OF JUDGMENT DENYING §2255 MOTION . . . . . 11

V.    ARGUMENT:

      A. The Fundamental Requirement Of Due Process Is The Opportunity
         To Be Heard At A Meaningful Time And In A Meaningful Manner
         Before A Neutral Decision Maker . . . . . . . . . . . . . . . . 11

      B. Establishing Prejudice Is Not An Element Of Fraud Upon The
         Court That Defiles The Judicial Process. And, Is Perpetrated
         By Or Suborned By An Officer Of The Court . . . . . . . . . . . 30

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 33

VII.  CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . 34

i

## TABLE OF AUTHORITIES

Alexander v. Robertson, 887 F.2d 421 (9th Cir. 1989). . . . . . . . . . . . 33

Blackledge v. Allison, 431 U.S. 63 (1977) . . . . . . . . . . . . . . . 20

Boykin v. Alabama, 395 U.S. 238 (1969). . . . . . . . . . . . . . . . 26

Brady v. United States, 397 U.S. 742 (1970) . . . . . . . . . . . . . . 26

Earp v. Stokes, 423 F.3d 1024 (9th Cir. 2005) . . . . . . . . . . . . . 18

Gleason v. Jandrucko, 860 F.2d 556 (2nd Cir. 1988). . . . . . . . . . . 18

Glover v. United States, 531 U.S. 198 (2001). . . . . . . . . . . . . . 29

Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) . . . . . . . . . . . . 24

Haines v. Kerner, 404 U.S. 519 (1972) . . . . . . . . . . . . . . . . 24

Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944) . . . . . 31

Lafler v. Cooper, 566 U.S. 156 (2012) . . . . . . . . . . . . . . . . 3, 9

Mathews v. Eldridge, 424 U.S. 313 (1976). . . . . . . . . . . . . . . 15

McDowell v. Calderon, 197 F.3d 1253 (9th Cir. 1999). . . . . . . . . . . 10

Mooney v. Halahan, 294 U.S. 103 (1925). . . . . . . . . . . . . . . . 8

Napue v. Illinois, 360 U.S. 264 (1959) . . . . . . . . . . . . . . . . 8

Ramirez v. Ghilotti Bros. Inc., 941 F.Supp.2d 1197 (N.D. 2013). . . . . . . 4

Shelton v . United States, 246 F.2d 571 (5th Cir. 1957) . . . . . . . . . 26

Strickland v. Washington, 466 U.S. 668 (1984) . . . . . . . . . . . . . 21

Torrey v. Estelle, 842 F.2d 234 (9th Cir. 1988) . . . . . . . . . . . . 26

Towery v. Schiro, 622 F.3d 1237 (9th Cir. 2010) . . . . . . . . . . . . 8

Walberg v. Israel, 766 F.2d 1071 (7th Cir. 1985). . . . . . . . . . . . 27

Zichko v. Idaho, 247 F.3d 1015 (9th Cir. 2001) . . . . . . . . . . . . 24

Zimmerman v. City Of Oakland, 255 F.3d 734 (9th Cir. 2001). . . . . . . . 10

United States v. Adepoju, 756 F.3d 250 (4th Cir. 2014) . . . . . . . . . . 6

United States v. Bishop, 774 F.2d 771 (7th Cir. 1985) . . . . . . . . . . 31

United States v. Burrows, 872 F.2d 915 (9th Cir. 1989) . . . . . . . . . . 20

United States v. Cronic, 466 U.S. 648 (1984) . . . . . . . . . . . . . . . 21

United States v. Fisher, 711 F.3d 460 (4th Cir. 2013) . . . . . . . . . . 26

United States v. Hughey, 147 F.3d 423 (5th Cir. 1998) . . . . . . . . . 6

United States v. McKenna, 327 F.3d 830 (9th Cir. 2003) . . . . . . . . . 17

United States v. Schaflander, 743 F.2d 714 (9th Cir. 1984) . . . . . . . 18

United States v. Seng Chen Yong, 926 F.3d 582 (9th Cir. 2018) . . . . . . 26

United States v. Seesing, 234 F.3d 456 (9th Cir. 2000) . . . . . . . . . 24

United States v. Sierra Pac. Indust., Inc., 862 F.3d 1157 (9th Cir. 2017) . 18

United States v. Sineneng-Smith, 140 S.Ct. 1575 (2020) . . . . . . . . . 15

United States v. Stonehill, 660 F.3d 415 (9th Cir. 2011) . . . . . . . . 18

United States v. Tatum, 518 F.3d 769 (10th Cir. 2008) . . . . . . . . . 6

United States v. Wilson, 631 F.2d 118 (9th Cir. 1980) . . . . . . . . . 24

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| LEWELLYN CHARLES COX, IV, | )    Criminal No. SA-09-CR-000248-DOC |
|         Petitioner, | )    Civil No. SA-20-CV-02064-DOC |
| | ) |
|      v. | )    The Honorable Judge David O. Carter, |
| | )    Presiding. |
| | ) |
| UNITED STATES OF AMERICA, | ) |
|         Respondent. | ) |
| | ) |
| | ) |

LEWELLYN CHARLES COX IV MOTION TO ALTER OR AMEND
THE COURT'S JUDGMENT IN RELATION TO HIS MOTION
TO VACATE, CORRECT, OR SET ASIDE SENTENCE.

COMES NOW, Lewellyn Charles Cox IV, petitioner pro se, hereinafter, Cox. Cox moves the Court pursuant to Rule 59(e) of the Federal Rules Of Civil Procedure for reconsideration of the court's judgment denying his 28 U.S.C. §2255 motion to vacate, correct, or set aside sentence, entered in the above noted civil cause on August 10, 2022. See Civil Docket (CVD#) Entry 31   In support of said request Mr. Cox present the following:

I.

STATEMENT OF CASE

On October 12, 2011, a grand jury sitting in the Central District Of California returned a Superseding Indictment charging petitioner Lewellyn Charles Cox IV and others with conspiracy to commit Bank Fraud, in violation of 18 U.S.C. §1349 [Count One] See CRD# 403  The indictment also charged aiding and abetting bank fraud, in violation of 18 U.S.C. §1344, and §2 [Counts Two through Forty-Two]; aiding and abetting identity theft, in violation of 18 U.S.C. §1028A (a)(1) and 18 U.S.C. §2 [Counts Forty-four, Fifty-five, Fifty-eight, Sixth-two, Seventy-

1

seven, Eighty-four through Ninety-one] and Felon in Possession of A Firearm, in violation of 18 U.S.C. §922(g)(1) [Count One Hundred and Five] See CRD# 1351

On September 1, 2014 Mr. Cox pled guilty, judgment was entered against him on Count One, Twenty-three, Forty-four, Fifty-three, Fifty-five, Fifty-eight, Sixty-two, Eight-four through Ninety-one, and One Hundred and Five. See CRD# 1351

### (a.) Mr. Cox's 28 U.S.C. §2255 Motion

On October 22, 2020, Mr. Cox filed his first-time §2255 motion with supporting memorandum. See Civil Docket (CVD#__) Entry 1  In the pro se motion Mr. Cox raised claims and arguments regarding the ineffective assistance of his trial attorney, Mr. Thomas Wolfsen, and Prosecutorial Misconduct stemming from the fabrication of the government's pretrial photo array evidence and perjurious averments and testimony by government agents made in support thereof. See ECF page designation 3 of 55 through 20 of 55 [pro se motion of Mr. Cox] Cox alleged  due to trial counsel's noted failures and governmental wrong doing his guilty plea is involuntarily made. Id  In support of his claims Mr. Cox submitted sworn declarations from his mother, ex-wife, and government witness Ronisha Jessie regarding the falsehood in the government pretrial photo array evidence and perjurious testimony submitted by the government's Secret Service Agents in the case , which misconduct were discovered post proceeding. Id

On November 9, 2020 the District Court, Judge David O. Carter entered a Show Cause Order directing the Government to respond to the claims and arguments Mr. Cox made in his §2255 motion. 1/

---

1/ 28 U.S.C. §2255(b) holds:

    Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the Court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

On February 11, 2021 the Government filed their Opposition Answer. See CVO

#11. [2/]   In the government response they paint Mr. Cox as a criminal mastermind

of the offense who used sophisticated means to defraud banks and engage in

identity theft schemes. See Government Opposition (G.O.) at ECF page designation

5 of 41 As to Mr. Cox's claim regarding the ineffectiveness of Mr. Wolfsen

in failing to compel discovery of the government's witness identification

evidence involving Agent Wesley Schwark and other government witnesses such

as Jessica Bacque, in the falsity of their identifications. The government

stated Attorney Wolfsen had not been ineffective because Wolfsen had made an

adequate cross-examination of Agent Schwark, and elicited testimony from

Jessica Bacque that she did not make the identification, presumably of Cox.

See G.O. at page 34 of 41 Alternatively, the government argued that at any event

Mr. Cox cannot establish prejudice by Attorney Wolfsen's alleged failures

_____

2/ It should be noted that like the government, the court did not address Mr.
   Cox Lafler v. Cooper, 566 U.S. 156 (2012) claim that he presented to the
   Court in a supplemental filing on February 8, 2021. Mr. Cox filed the pro se
   pleading three days before the government opposition filing. Yet, the
   government did not address it directly, but did finally admit that the
   government did, in fact, offer Mr. Cox a written Plea Agreement. See
   Government Opposition ECF page designation 21 of 47 lines 15 through 20. It
   should be recalled that during the June 30, 2014 Hearing Assistant United
   States Attorney Joesph McNally denied that the government had made an offer
   to Mr. Cox: "There isn't a Plea Agreement as far as I recollect. Actually
   I'm positive of that. We never extended an offer and would never do so in a
   binding way." See June 30, 2014 hearing at page 15:8-11 Mr. Cox directs the
   Court's attention to ATTACHMENT 1 to this filing, attachment 1 is a binding
   Fed. R. Of Crim P. [in substance] 11(c)(1)(C) Agreement that AUSA McNally
   authored. At denoted page [3] paragraph 14 the government states regardless
   of the guidelines calculations or §3553(a) factors the parties agrees 180
   months would be a reasonable sentence in Mr. Cox case. Id At this June 30th
   hearing Mr. Cox asked for this deal back due to his attorney and the
   government actions surrounding the loss amount calculation, Mr. Cox stated
   he would have taken the deal. Attorney Wolfsen was unsure that there was a
   written agreement, but informed the Court that he recalled AUSA McNally making an offer that he
   recalled AUSA McNally making an offer of at least 15-years, but Mr. Cox
   rejected it because he didn't believe $8 million in loss was there. Id 14:
   5-19 Yet, it should be noted at a June 13, 2014 hearing prior to Attorney
   Wolfsen informed the Court that he advised Cox not to take the offer because
   he, defense investigator, and Cox were unable to confirm such an estimated
   loss calculation. See June 13, 2014 Hearing at 14:1-4 A manifest injustice
   will occur if this matter is left unaddressed or remedied.

3

surrounding the identification involving Jessica Bacque because Mr. Cox did not plead guilty to a Count based on the Bacque identification and that the Court excluded loss amounts linked to Bacque at sentencing.[3]

On May 21, 2021 associate counsel sought leave to join the case on Mr. Cox's behalf. Attorney Joesph Virgilio, THE JUSTICE FIRM; and Attorney Christopher Darden, DARDEN LAW GROUP APC. See CVD #17  On July 12, 2021 the Court granted associated counsel request. See CVD # 20

---

[3] In Mr. Cox's pro se Memorandum he states Attorney Thomas Wolfsen had been ineffective in failing to file a motion to compel the government to provide the defense viewable copies of the government's six pack photographic lineup evidence regarding the government witnesses alleged positive identification of him in year-2005, that Attorney Wolfsen should have done so in advance of the July 28, 2011 Supression Hearing. See Motion ECF page 3 of 55. Though the Government Opposition addressed what affect Jessica Bacque's alleged positive identification of Mr. Cox had on the outcome of his proceeding, the government opposition failed to address Mr. Cox's claim that Attorney Wolfsen's failure to file the motion to compel release of viewable copies of the government's six pack lineup evidence prevented Cox from discovering at that time the government well executed scheme of fabrication of the six packs, with respect to the purported positive identification of him by government witnesses Ronisha Jessie, Guadalupe Mendoza, Yolanda Magana, and Brandon Pettus, who according to the government identified Cox in year-2005, and signed a six pack photo array that contains a picture of Cox that were not actually taken until[October 30, 2008 ].See Cox's Mot. ECF page 6 of 55 through 9 of 55  Mr. Cox also alleged in his pro se §2255 filing that Secret Service Agent Wesley Schwarkcommitted perjury when he testified before the Court on June 27, 2014, and through a sworn declaration he filed before the Court both claiming that he conducted the identification process investigation in year 2005 using six packs, each of which contains the photo of Mr. Cox that were not taken until year 2008 at a California Department Of Corrections and Rehabilitation Parole Office. See Mot. page 12 of 55  Although, these allegations of Prosecutorial Misconduct and Perjury by Government agents is setforth in Mr. Cox's initial pro se filing the government failed to address the fabrication and perjury allegation by its agents in the government Opposition. Id Also See, Ramirez v. Ghilotti Bros, Inc., 941 F.Supp 2d 1197, 1210 & n.7 (N.D. Cal. 2013)(holding, argument is conceded where defendant failed to address it in its opposition.)

On September 2, 2021 associated counsel filed Mr. Cox's Reply to the government's opposition to his §2255 motion. See CVD# 25  In the reply counsel mirrored the pro se claims and arguments Mr. Cox himself raised in his initial pleading. In the associated counsel filing, pertinent to the instant Rule 59(e) motion, counsel argued that the government opposition argument that Attorney Wolfsen was not ineffective because Wolfsen "challenged the six pack identifications that defendant [Cox] claimed were flawed and the Court ultimately resolved the issue by not relying on them in imposing sentence" (Government Opposition page 5 lines 23-25) And, that "Defendant [Cox] did not plead guilty to a Count charged based on the Bacque identification and the Court excluded loss amount linked to Bacque at sentencing." Id  And, presumably, therefore are irrelevant, misses the point. See REPLY page 6 of 21  Cox's associate counsel argued the photograph used by the government in their six-pack during the criminal phase is from a 2008 mugshot of Mr. Cox, and therefore could not have been used in 2005 to identify him, that the government witnesses could not have identified Cox from a photograph that did not exist. Id Counsel argued had Attorney Wolfsen obtained a legible copy of the photographs and had Mr. Cox been able to view the government's six packs he may have known that the photograph was not taken until 2008. See Page 7 of 21 Further, associated counsel argued Cox was not shown a legible copy of the six-pack photographs until after he had pled guilty on December 16, 2011. And that, Attorney Wolfsen's failure to obtain and show Cox a legible copy of the six-packs resulted in Cox being unaware, until too late, that the six-pack arrays the government used is fabricated. Id [4]

---

[4] As the Court may recall On July 1, 2011 Attorney Wolfsen filed a Motion to Suppress the government six-pack evidence based upon a claim of suggestive identification by Agent Wesley Schwark. See CRD# 288  On July 15, 2011 the government filed their Opposition under seal, CRD# 309,312, along with the declaration of Schwark, CRD #312-2, and the six-pack photo array in question. See CRD# 312-3

5

## II. APPLICABLE AUTHORITY

It remains undecided in the Ninth Circuit whether a prisoner may be released
on bail during the pendency of his district court habeas action. See In Re Roe,
257 F.3d 1077, 1080 (9th Cir. 2001)(per curiam) However, in Land v. Deeds, 878 F.3d
318, 318-19 (9th Cir. 1989) the Ninth Circuit noted that the district court may
have authority to release a state prisoner on bail pending resolution of a habeas
proceeding, but only in extraordinary cases involving special circumstances or a
high probability of success. Id (citing Aronson v. May, 85 S.Ct. 3, 5 (1964))
(requiring both exceptional circumstances and high probability of success.)) District
Court decisions in the wake of Land have concluded that the district court has
authority to grant bail pending a habeas decision, but that the defendant must show
both special circumstances and a high probability of success. E.g., Hall v. San
Francisco Supreme Ct., No 09-5299-PJH, 2010 U.S. Dist Lexis 33030 (N.D. Cal. Mar.
8, 2010) Mr. Cox believes he can carry this burden here.

### III. ARGUMENT

MR. COX'S POST-TRIAL DISCOVERY OF INDEPENDENT EVIDENCE ESTABLISHING THE
GOVERNMENT'S AFFIRMATIVE MISREPRESENTATION IN THEIR WITNESSES POSITIVE
PRE-TRIAL IDENTIFICATION OF COX; THE ABSENCE OF A GOVERNMENT DENIAL OF
HAVING ENGAGED IN THE CLAIMED WRONG DOING IN RESPONSE TO MR. COX'S
SECTION 2255 MOTION, AND THE APPRECIABLE AFFECT THE GOVERNMENT'S
ASSERTED WRONG DOING HAD ON MR. COX'S NOW DECEASED ATTORNEY'S CONDUCT
OF MR. COX'S DEFENSE THERE FORWARD, AND UPON COX'S PLEA BARGAINING
PROCESS AND ULTIMATE DECISION TO ENTER A PLEA OF GUILTY PROVIDES
SPECIAL CIRCUMSTANCES FOR ACCORDING MR. COX RELEASE ON BOND IN ORDER TO
MAKE THE HABEAS REMEDY EFFECTIVE.

#### A. Fraudulent Government Six Pack Evidence

In his Section 2255 motion Mr. Cox alleges that the Government through its
agents, Secret Service Agent Wesley Schwark engaged in an act of affirmative
misrepresentation by claiming government witnesses identified Mr. Cox in year-2005
in a six pack photo array lineup, while Cox was wearing a shirt that was not
photographed until August of 2008. Knowing the subterfuge they were engaging in
the government provided Mr. Cox's attorney blacken copies of the six pack. See
ATTACHMENT 1                                    6

On October 8, 2021 Associated counsel filed for leave to file a Sur-reply pleading, upon Mr. Cox receiving new evidence, a 2008 photograph mugshot of Cox that he received after filing a Freedom Of Information request to the California Department Of Corrections & Rehabilitation Archives Unit, the photograph shows through date stamp that it was taken on October 30, 2008 at a division Parole Office. See Sur-reply Request pleading, pages 1 through 2  CVD# 26

On October 12, 2021 the Court granted associate counsel request to file the Sur-reply. See CVD# 27   On October 28, 2021 associate counsel filed the Sur-reply on Mr. Cox's behalf. In the pleading counsel reiterated with further clarity Mr. Cox's pro se claim as set forth in the §2255 motion, that Cox guilty plea is not voluntary due to the incompetent legal advice of Attorney Wolfsen with respect to the government's photographic evidence in a six-pack lineup introduced by the government, that Attorney Wolfsen failed to challenge, instead Wolfsen informed Mr. Cox, "it's you in the picture I'm not going to argue that it isn't you." See CVD# 28 page 1  Associate counsel informed the Court that Mr. Cox had recently obtained through an FOIA request new evidence that conclusively establish that the government used a fabricated six pack lineup, that the government claims were signed by Jessica Bacque in year 2005, as well as others, to obtain Mr. Cox's conviction. Attached to the Sur-reply pleading were the sworn declaration of Mr. Cox, and the newly discovered and obtained 2008 mugshot as Exhibit 2 thereto, which associate counsel argues establishes that this photograph as were presented by the government during the criminal phase of Mr. Cox's proceeding as being used in year-2005, were not actually created until three years later.  Sur-reply page 1

7

Associate counsel pointed out that prosecution witness Secret Service Agent Wesley Schwark testified that multiple witnesses, specifically, Guadalupe Mendoza, Yolanda Magana, Ronisha Jessie, and Brandon Pettus were also shown and "signed" the photographic six-pack lineups in 2005 and 2006. See Cox's Sur-Reply Declaration, Exhibits 4 through 8 [6/]   Associate counsel went on to argue that the photograph used in those Exhibits 4 through 8 of the Sur-reply was not taken until 2008, and represents additional acts of government fabrication of evidence. See Sur-reply CVD #28 page 2  Citing Towery v. Schiro, 622 F.3d 1237, 1244-45 (9th Cir. 2010); Napue v. Illinois, 360 U.S. 264, 269-71 (1959); and Mooney v. Holohan, 294 U.S. 103, 112 (1935) (per curiam) counsel argued when the prosecution introduces evidence that is false or inadmissible misconduct occurs. See Sur-reply at page 2 Counsel argued that a terrible injustice has occurred in Mr. Cox's case, and that absent the government's use of the false six-pack, Mr. Cox would not have plead guilty. Counsel concluded after multiple Freedom Of Information request, Cox finally obtained the photograph the government used in the "2005" lineup. And, as accurately indicated by the California Department Of Corrections and Rehabilitation Department Of Archives Unit, that photograph of defendant Cox was not taken until year 2008. Sur-reply at page 3

On August 10, 2022 the Court entered judgment denying Mr. Cox's Section 2255 motion. See CVD# 31   MINUTE ORDER   In the court's order the Court recognized

---

[6/] The trial record shows that Secret Service Agent Wesley Schwark was brought back in by the government to testify on June 27, 2014 following the disastrous testimony of Secret Service Agent James Mikkelson on April 4, 2014 regarding how the government witnesses identification of Mr. Cox had been conducted. See April 4, 2014 Transcript page 73 through 83  During this hearing AUSA Joesph McNally and Mikkelson indicated, or testified that Agent Schwark had conducted the identification process.  At the June 27, 2014 hearing when Agent Schwark arrived from Washington, DC, he testified that he had conducted the identification process involving the stated positive identification of Mr. Cox by Jessica Bacque, Guadalupe Mendoza, Yolanda Magana, Ronisha Jessie, and Brandon Pettus. See Transcript pages 80 through 92. During this hearing this Court specifically asked Agent Schwark what year he had conducted the identification process involving Yolanda Magana, Schwark stated, "2005". See Transcript at 85:5-9

8

Mr. Cox's §2255 motion as bringing claims that his attorney, Mr. Wolfsen, was (1) ineffective for failing to properly advocate regarding photographic evidence; (2) loss calculations at sentencing were improper; and (3) Petitioner was denied his right to allocution. See M.O. at ECF page 3 of 5  First the Court addressed Cox's ineffective assistance of counsel claim that his attorney had been ineffective in failing to challenge the photographic evidence and that this failure resulted in Petitioner Cox involuntarily pleading guilty. Specifically, the Court recognized that Mr. Cox's claim centered around the government's six pack allegedly used to identify him in 2005, which contains a photo Mr. Cox contends was taken in 2008. Id  The Court, however, stated: "Despite Petitioner's arguments regarding ineffectiveness, his original counsel made a motion to suppress the photo six-pack and elicited testimony from the witness [Jessica Bacque] who had allegedly used it to identify Petitioner that she did not recognize the handwriting on the six-pack as her own. Opp'n at 11, 30-31. However, even if Petitioner was able to prove his original counsel was ineffective, his argument fails for a lack of prejudice." See M.O. page 3 of 5  The Court went on to find that Mr. Cox pled guilty without a plea agreement, after rejecting the Government's offer of one, [7/] and the Court found that Mr. Cox had not been convicted of any counts based on the photograph at issue. Pointing to the government's Opposition at page 9, 30, the Court concluded since Mr. Cox's conviction and sentence are not based on the photograph, he cannot show that any prejudice resulted for the purposes of his motion. See M.O. page 4 of 5

---

[7/] As Mr. Cox setout above at footnote 2/ page 3, Assistant United States Attorney Joesph McNally at the time of the criminal proceeding when the issue arose concerning Whether the government had made a formal written offer of a Plea Agreement to Mr. Cox, AUSA McNally denied with certainty that the government had extended a plea offer to Mr. Cox. See June 30, 2014 Hearing Transcript page 15:8-11. Which caused the Court to reject Cox's claim of a Lafler v. Cooper, 566 U.S. 156 (2012) violation with respect to Attorney Wolfsen's deficient performance on the issue.

Further, the Court found that Mr. Cox raised arguments regarding the voluntariness of his plea because of "vindictive prosecution" as well as the possibility of being charged with using an access device, but because Mr. Cox pled guilty without a plea agreement, and argument Cox made that his plea was induced basedon extra charges or false promises fails for lack of prejudice. Therefore, the Court denied Mr. Cox's motion respect to ineffective assistance of counsel. Id page 4 of 5  Next, the Court addressed Mr. Cox's loss calculation argument and denied the same. Finally, the Court rejected Mr. Cox's claim that his right to allocution at sentencing were denied. The Court denied this claim as procedurally improper and Mr. Cox's inability to establish prejudice. Id page 5 of 5.

The Court denied Mr. Cox a Certificate Of Appealability, finding he cannot make the "substantial showing" of a denial of a constitutional right required for issuance of a COA. Id

The instant Federal Rule Of Civil Procedure, Rule 59(e) motion for reconsideration of the court's August 10, 2022 judgment now follows as Mr. Cox believes the Court has committed manifest errors of law or fact, abused its discretion, and has made an initial decision that is manifestly unjust.

III.

APPLICABLE STANDARD OF REVIEW

It is appropriate for a district court to alter or amend judgment under Fed. R. Of Civ. P. 59(e) if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there were an intervening change in controlling law." Zimmerman v. City Of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) Also, reconsideration of the judgment is appropriate when "necessary to correct manifest errors of law or fact upon which the judgment is based." McDowell v. Calderon, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999)

IV.

BASIS FOR RECONSIDERATION OF JUDGMENT DENYING §2255 MOTION

Petitioner Cox seeks reconsideration of the Court's August 10, 2022 judgment in order to prevent a miscarriage of justice, to give the Court the opportunity to correct errors of law or facts upon which the court's judgment is based. Cox believes the Court deprived him of his fundamental due process right to have his presented claims carefully considered and determined in accordance with established law, and Supreme Court and Ninth Circuit precedent. Cox believes the Court has demonstrated complacency and reluctance to recognize that an Officer of the Court and its government Agent has committed a Fraud Upon the Court that defiled the integrity of the judicial process and the truth seeking function thereof. And that the Court has improperly shifted the burden of proof to Mr. Cox to establish prejudice stemming from the Officer of the Court and government agent's wrong doing. A result that is manifestly unjust.

V.

ARGUMENT

A. The Fundamental Requirement Of Due Process Is The Opportunity To Be Heard At A Meaningful Time And In A Meaningful Manner, Before A Neutral Decision Maker.

The habeas record shows following conviction and sentencing in this case Mr. Cox discovered that the government's six pack photographic evidence had been fabricated. See §2255 Motion page 6 of 55   In his motion Cox states the first time he was able to see a viewable copy of the government's six pack evidence was in November of 2014. And that he had directed Attorney Wolfsen to provide him prior thereto viewable copies of this government evidence. Id page 7 of 55  Cox's motion states that Attorney Wolfsen visited the Secret Service office where he met with Assistant United States Attorney Joesph McNally and Secret Service Agent James Mikkelson to obtain viewable copies of the

11

six pack photographic evidence, but Wolfsen was told, "the copy machines are broken", and that Wolfsen was only permitted to view the photographic material. Id page 7 of 55 through 8 of 55   Upon Wolfsen's return, counsel informed Cox that, "it's you in the picture I'm not going to argue that it isn't you, so you don't need to see the six packs". Id   In his motion Cox states he was influenced by misrepresentation that the six packs were not fabricated. Id page 9 of 55   In his motion Mr. Cox states that Attorney Wolfsen failed to inform him that Jessica Bacque had denied meeting him in 2005. Id  10 of 55   And, that after four years following the July 28, 2011 Suppression Hearing Cox received Bacque's statement with an attachment of the viewable six pack he had waited so long to discover.  Id 9 of 55 through 10 of 55

   In the court judgment denying Cox's 2255 motion, the court uses language that demonstrates a disbelief that the government used a fabricated photo six pack in year-2005 to conduct their identification interview session with Jessica Bacque, and that this six pack contains a photograph of Mr. Cox that were actually taken in 2008. Specifically, the Court states, "underlying Petitione ineffective assistance claims is a photo six-pack allegedly used to identify him in 2005, which contains a photo Petitioner contends was taken in 2008." See M.O. page 3 of 5 at A. Ineffective Assistance Of Counsel  (emphasis added in underline) Mr. Cox states contrary to the court's obvious disbelief that AUSA McNally would act in such a manner, an objective analysis of the criminal record and Civil record herein would show that the government used a fabricated six-pack lineup in conducting all of its witnesses alleged interview sessions and not just Jessica Bacque upon which the court judgment order focuses.  First, in his pro se motion Mr. Cox states he first received and reviewed a viewable copy of the government six-pack lineup in 2014, and that it shows it had been earlier filed as Government Docket #312. See Cox's

12

§2255 motion at  9 of 55 through 10 of 55  Here Cox argues that  Attorney
Wolfsen was ineffective because he failed to inform Cox that Bacque had denied
meeting him in 2005,as reflected in the government six-pack involving Ms.
Bacque. Id  In addition, Mr. Cox motion presents a claim that Secret Service
Agent Wesley Schwark committed perjury in his declaration presented to this
court in the government's Opposition to Attorney Wolfsen's Suppression
motion that were predicated upon the government suggestive identification
methods in the witnesses photo identification of Mr. Cox. See Motion page
12 of 55 at Agent Wesley Schwark committed perjury  In addition, Mr. Cox
claims that agent Schwark committed perjury when he testified on June 27, 2014.
See Transcript pages 70-100  Mr. Cox is correct, and the Court's judgment
failed to address this claim or hold an evidentiary hearing as associated
civil counsel requested. See CVD# 28

     It must be recalled that on July 1, 2011 Attorney Thomas Wolfsen filed
a Motion to Suppress Government Suggestive Photographic Show-Up evidence. See
CRD# 288 8/  At pages 2 of 7 through 4 of 7 of Attorney Wolfsen's suppression
motion are the blacken out copies of the six packs used in the stated positive
ID sessions of Mr. Cox with witnesses Jessica Bacque, Guadalupe Mendoza, Yolanda
Magana, Ronisha Jessie, and Brandon Pettus, all shows through signature that
they were signed by these individuals in year 2005, in each individual
six-pack Mr. Cox is purportedly at position 4, a certainty that could not be

---

8/ A review of Document 288 will reveal that Attorney Wolfsen was unaware that
   the Government's six-pack photographic evidence was fabricated at the time
   and contained a photo of Mr. Cox that was not actually taken until 2008.
   Attorney Wolfsen's July 1, 2011 filing dealt strictly with the suggestive
   nature of the government's claimed identification interviews with its many
   witnesses.

confirmed due to the photographs the government provided the defense being indiscernable. See CRD#288-2 Exhibit B  Which Mr. Cox states were intentional given the concealed falsehood the six-pack had at the time that were known only to government counsel and Secret Service Agent Wesley Schwark.

On July 15, 2011 the Government filed a SEALING APPLICATION; PROPOSED ORDER: DOCUMENT UNDER SEAL. See CRD# 309  In a separate filing, the government presented its OPPOSITION MOTION TO SUPPRESS SUGGESTIVE PHOTOGRAPHIC SHOW-UP. See CRD# 312  Attached to the pleading were the sworn declaration of Secret Service Agent Wesley Schwark. See CRD# 312-2  In the averment, which Mr. Cox identifies in his §2255 motion as perjurious, See Mot. at 12 of 55, Agent Schwark claims he used #312-3 six-pack array to his affidavit to conduct the identification interviews with Jessica Bacque, Guadalupe Mendoza, Yolanda Magana, Ronisha Jessie, and Brandon Pettus, and that all of these individuals positively identified Mr. Cox in year-2005. Id page 2 narration 4 of Schwark declaration. Comparing the photo of Mr. Cox with that he provides as Exhibit 2 of his Court approved Sur-reply filing will establish that the government counsel and Agent Schwark misled this court, and that it is impossible for Agent Schwark to have conducted the identification interviews with any of the government witnesses in year-2005, when the photo of Cox as contained in the Government's July 15, 2011 Sealed filing was not actually taken until 2008, long after Secret Service Agent Wesley Schwark had left the California Agency to work as a dignitary on a detail in Washington, DC. See June 27, 2014 transcript  page 74:10-18   When the more credible evidence from the California Department Of Corrections & Rehabilitation Archives file shows that the photograph the government misled this Court into believing to be evidence that Mr. Cox was a participant in a much broader conspiracy beginning in year-2005 was deceptively false.

14

This Court should vacate its earlier judgment and reconsider Mr. Cox's case.

Long ago the Supreme Court recognized that "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 313, 333 (1976) And, recently the Supreme Court unanimously reiterated the elemental truth that "[i]n our adversarial system, we follow the principle of party presentation," pursuant to which "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." <u>United States v. Sineneng-Smith</u>, 140 S.Ct. 1575, 1574 (2020) Accordingly, the Court emphasized, lower courts should be "passive" and "modest". Id  Respectfully, Mr. Cox states, the court's judgment does not address Mr. Cox's claims of government wrong doing in the obvious fabrication of material evidence that was calculated to deceive the Court and undermine Mr. Cox's ability to assert a good defense, or make an informed decision on whether to proceed to trial. The court's August 10, 2022 judgment makes it appear that the Court has done the government's bidding, by willfully ignoring the fact that the court itself is a victim of the government's well executed scheme and by requiring that Mr. Cox shoulder the burden of establishing prejudice surrounding Attorney Wolfsen's failure to discover what the government obviously went to pain staken effort to keep concealed until after they had achieved the designed ending they wanted, i.e., Mr. Cox conviction and sentence based upon the court's tainted belief that Mr. Cox led these purported five check runners in year-2005, and therefore the scheme was extensive, long lasting, sophisticated and Mr. Cox deserved sentencing increases for being a leader and organizer of the charged conduct.

It must be recalled prior to Secret Service Agent Wesley Schwark appearance on June 27, 2014 that Secret Service Agent James Mikkelson testified before the Court on April 4, 2014. During this hearing, which the Court conducted examination of Mikkelson, the Court informed him that the purpose of the hearing were to determine Whether there were five or more participants involved in the case in order to determine if Mr. Cox should be given an organizer of leadership role adjustment. Or whether the case was otherwise extensive. Id 73:12-17 The Court informed Agent Mikkelson that Guadalupe Mendoza's alleged identification of Mr. Cox were relevant to those determinations. Id  See Transcript Excerpts as ATTACHMENT 2 hereto  Agent Mikkelson testified that Mendoza had been shown a six pack lineup previously by Agent Schwark. 73:18-19 Agent Mikkelson stated he had reviewed records of the case located the six pack Agent Schwark had used and he went out to conduct a followup, speaking with Mendoza. Id 73:23-25  However, upon further exam the Court was concern about the evasive answers Mikkelson provided, whether Mendoza had been shown a single photo or six-pack, finding Mikkelson's lack of personal knowledge troubling the Court recessed the hearing and directed AUSA McNally to bring Agent Schwark before the Court. Near the conclusion of the April 4, 2014 hearing the court expressed concern with the absence of clarity whether Mr. Cox should be given four levels for sophistication and whether there were five people picking Mr. Cox out in lineups. Id 81:4-7  At sentencing Mr. Cox did ultimately receive increases that were predicated on the government statements that their witnesses positively identified Mr. Cox from six-pack lineups, Mr. Cox has after-the-fact discovered with undisputeable evidence to be a deliberate government fabrication.

16

Mr. Cox argues it cannot be reasonably disputed when Agent Mikkelson appeared before the Court on April 4, 2014 his appearance were related to material matters regarding Mr. Cox's sentencing exposure prospect, thus, whether the government stated positive identification of Mr. Cox were material to that ultimate determination. It is established in the Ninth Circuit that a statement or testimony is material if "it has the natural tendency to influence, or was capable of influencing  the decision-making body to which it was addressed." United States v. McKenna, 327 F.3d 830, 839 (9th Cir. 2003) Likewise, when AUSA McNally filed the government's July 15, 2011 Suppression Opposition pleading containing the sworn Declaration of Agent Schwark said pleading were material to the issue whether the government's alleged identification process had been unduly suggestive. And Agent Schwark testimony on July 27, 2014 were material to the issue Whether he conducted the identification process involving all of the government witnesses in 2005 as the government and he claims.

In his pro se motion Mr. Cox states his plea of guilty is involuntary because it was induced by the government's fabrication of the six-pack evidence, based in part, on Attorney Wolfsen's failure to file a motion to compel the government to provide viewable copies of their photographic lineups involving the government witnesses said to have made a positive identification of him. Mot. at 6 of 55  In his pro se filing Mr. Cox argues that his 2008 mugshot establishes that Agent Schwark could not have conducted the identifications in 2005 as he claims in his declaration. Mot. page 16 of 55 at (VIII) New Evidence  At page 18 of 55  Ronisha Jessie Cox points out that Ronisha Jessie states she never met Agent Schwark, and that there were no meeting in 2005 where agents showed her six packs, she declares that the interview occurred in "late 2009". See Jessie Affidavit ATTACHMENT 3 hereto   A fraud has been perpetrated upon this Court and Mr.

17

Cox is entitled to his opportunity to further prove the same. See <u>United States</u> <u>v. Schaflander</u>, 743 F.2d 714, 717 (9th Cir. 1984) (requiring an evidentiary hearing on a §2255 motion if "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.")  Mr. Cox's §2255 motion, and Sur-reply pleading have presented colorable claims of Prosecutorial misconduct akin to Fraud Upon the Court, aided, planned, or ratified by Assistant United States Attorney Joesph McNally, an evidentiary hearing is required to ascertain the credibility of Mr. Cox's supporting witnesses and the accuracy of the photo exhibits he tendered in support. See <u>Earp v. Stokes</u>, 423 F.3d 1024 (9th Cir. 2005)(remanding for an evidentiary hearing on petitioner's Prosecutorial Misconduct and Ineffective Assistance Of Counsel claim).[9/]

          (a.) The Court's Failure To Address Mr. Cox's Claim Of Prosecutorial Misconduct And Perjury Committed By Government Agent Regarding The Deliberate Fabrication Of The Government's Six-Pack Photographic Evidence Constitutes Clear Error In The Court's §2255 Judgment.

    As Mr. Cox set forth in his <u>pro se</u> §2255 motion and as Court approved associated counsel advanced in Civil Docket #28, after Mr. Cox was convicted and sentenced in this case he discovered new evidence that credibly establishes that the government and its agent committed fraud upon the Court that undermined

---

9/ As Mr. Cox's <u>pro se</u> pleading and those submitted by his Court approved associated counsel shows, he discovered after-the-fact that the government had perpetrated a fraud upon the court through its deliberate fabrication of material evidence, and introduced perjurious testimony by Agent Schwark to bolster its stated accuracy. Although perjury by a party or witness, by itself, is not normally Fraud upon the Court. E.g., <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 559-60 (2d Cir. 1988) Perjury can constitute fraud upon the court if it is "so fundamental that it undermined  the workings of the adversary process itself." See <u>United States v. Stonehill</u>, 660 F.3d 415, 444-45 (9the Cir. 2011) Or the perjury by the witness [agent] involves or is suborned by an Officer of the Court. See <u>United States v. Sierra Pac. Indus., Inc.</u>, 862 F.3d 1157, 1168 (9th Cir. 2017)

the adversary process through the fabrication of and introduction of declarations and testimony known to be false. To establish this fact Mr. Cox submitted never before determined Affidavits from his ex-wife Jamala Pratt. See Cox's §2255 motion Exhibit U , discussed at page 11 of 55 of motion, Mr. Cox has reproduced Jamala Pratt's affidavit at ATTACHMENT 4 hereto. In her averment Ms. Pratt states she was present at the California Parole Office the day Mr. Cox was released and witnessed the photograph the government used of Mr. Cox in their earlier six-pack being taken. See the photograph Ms. Pratt speaks of at ATTACHMENT 5 hereto.  Mr. Cox also submitted a sworn declaration from his mother Elizabeth Cox in his §2255 motion. See Mot. Exhibit G, discussed at page 8 of 55 of Mr. Cox §2255 motion, reproduced herein as ATTACHMENT 6  In her averment Ms. Cox avers she met Jessica Bacque at the courthouse on June 27, 2014 and that Ms. Bacque informed her that she had never met her son Lewellyn Cox before, and had not identified him as the passenger of a white jaguar on November 16, 2005. Id narration 2  Ms. Cox avers that she recalls speaking to Attorney Wolfsen in May of 2014 and requested viewable copies of the government  six packs, because they were blacken out. Id narration 3 (compare with Defense Suppression Motion filing CRD# 288-2 blacken discovery provided six-packs)  Ms. Cox avers that she received the six-packs after her son, Mr. Cox had been sent to prison in 2014, and noticed that the shirt he was wearing in the six packs were purchased by her for his birthday on August 2, 2007. Id narration 4  In addition, to these outside witnesses, Mr. Cox motion also relies on the sworn affidavit of Ronisha Jessie, one of the government's material witnesses who the government informed the Court through filings, CRD# 312 and 312-2  Had positively identified Mr. Cox in year-2005 as a participant in the charged conspiracy. Id

19

Mr. Cox relied on Ms. Jessie's Affidavit in his §2255 motion at page 18 of 55, Exhibit I, reproduced herein as ATTACHMENT 3. In her averment Ms. Jessie states she never met Agent Wesley Schwark and was never asked to view any six packs of photos in 2005. She states the only time she was questioned was in late 2009 by Secret Service Agent James Mikkelson. That it was in 2009 that she was asked to view a person and identify them from the six pack. And that she felt pressured to pick the person after Agent Mikkelson pointed to the photo. Id

It is established where a Section 2255 motion have been based on alleged occurrences outside the record the Ninth Circuit has required an Evidentiary Hearing be held. E.g., United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) In deed, the Supreme Court has held that an evidentiary hearing may be required in spite of "the barrier of the plea or sentencing procedure record [which], although imposing, is not invariably insurmountable." Blackledge v. Allison, 431 U.S. 63, 74 (1977)  In response to Mr. Cox's 2255 showing the government chose to ignore Mr. Cox's pro se claim that the government had fabricated its six pack photographic lineup evidence, and that agent Schwark had testified falsely in support thereof in his declaration, CRD # 312-2 ; June 27, 2014 testimony. Instead of addressing Mr. Cox obvious claim of fraud upon the court, an attack upon the judicial integrity and truth seeking function of the court. The government response chose to minimize the effectiveness of their six-pack evidence, by stating Attorney Wolfsen had challenged a single witness, Jessica Bacque, during cross examintaion and elicited testimony from her that she had not made an identification of Cox. See Government Response at page 34 of 41  And, alternatively, the government argued Cox cannot establish prejudice because Cox did not plead guilty to a Count based on the Bacque identification.

20

And the Court excluded loss amounts linked to Bacque at sentencing. Id

As Mr. Cox has demonstrated herein, Attorney Wolfsen could not have challenged the government's six-pack photographic evidence in 2011 based on a claim that it contained a photograph that were taken in 2008. Attorney Wolfsen certainly could not have, and didn't make such a challenge at that time, because the government by deliberate design provided the defense blacken out copies of its six pack evidence, the reasoning for such only became clear after Mr. Cox elected to plead guilty, or face certain defeat at trial by having Guadalupe Mendoza, Ronisha Jessie, Jessica Bacque, Yolanda Magana, and Brandon Pettus take the stand and point him out as a participant or leader in the charged conspiracy. So he ultimately pled guilty without written plea agreement, for as he claims to preserve his unfettered right to bring claims of government wrong doing and ineffective assistance in a collateral motion as he has. Cox argues it is disingenuous for the government to now seek to absolve themselves from wrong doing later discovered by pointing with praise to now deceased counsel's performance that existing new evidence shows were interfered with in a significant way regarding a material matter.

Generally, a defendant must show that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense," Strickland v. Washington, 466 U.S. 668, 687 (1984) however, not all claims of inadequate counsel are subject to the general test. For example, "prejudice is presumed" when counsel is actually or constructively denied and in certain context where the [government] interferes with counsel's assistance. Id 466 U.S. at 692 (citing United States v. Cronic, 466 U.S. 648, 659 (1984)) Strickland clearly holds that the "Government violates the right to effective assistance [of counsel] when it interferes in certain ways with the ability of [defense] counsel to make independent decisions about how to conduct the

21

defense.") <u>Strickland</u>, 466 U.S. at 684   By providing Attorney Wolfsen blacked out copies of their six pack photo array evidence in advance of the July 28, 2011 Suppression hearing, Attorney Wolfsen was deprived of the "ability" to meaningfully consult with Mr. Cox on whether there was a viable basis upon which to make an additional  challenge based on the fraudulent inclusion of a photograph of him that he could have been placed in a position to recognize were taken in 2008, and thereby the government's sealed suppression filing could have been exposed as a falsehood. And, in turn, the Court may have found the indictment's inclusion of a 2005 time period involving the government's stated identifying witnesses to be unproven.  And Mr. Cox would have proceeded to trial. See CVD# 28 page 7 of 54  (Cox stating he would not have pled guilty absent fabricated six pack evidence) Also, CVD# 2 page 2 of 141 (Cox relating Attorney Wolfsen informed him should he prove the fabrication he should proceed to trial)

It is, therefore, submitted that the Court's August 10th judgment represents clear error, (1) the court's failure to set an evidentiary hearing to address occurrences and events outside the original trial record, (2) for requiring Mr. Cox to establish prejudice in light of the government obvious interference with Mr. Cox's trial counsel conduct of the defense, and fabrication of evidence that were material to decisions the Court made with respect to Mr. Cox's Count One conviction related to the 2005 year period, and his sentencing exposure concerning Whether he, in deed, were identified by the five government witnesses using the same fraudulent six pack, whether he led these five individuals, Whether he deserved a leadership enhancement, and Whether the conduct was as extensive as the government claimed at the time of the earlier proceeding bolstered by evidence and testimony that new available evidence and independent averments convincingly demonstrates to be fraudulent.

In sum, during the earlier proceeding on April 4, 2014 the Court informed

Agent James Mikkelson:

> "Now, what I'm trying to determine, if there are five or more
> people as it pertains to paragraph 87. Going to determine whether
> he's [Cox] an organizer or a leader that involved five or more
> participants or whether it was otherwise extensive, subsection "A"
> in that paragraph. Guadalupe Mendoza, positive identification?"

> See Transcript, page 73:12-17 (Transcript provided ATTACHMENT 2
> hereto)

Later in the April 4th hearing the Court stated:

> "There's only two things I need. I just need to make certain of
> my loss amount with more clarity and I need to make certain of
> the four levels for sophistication and that I got five people
> picking him out.

> Id page 81:4-7

Mr. Cox argues the above shows that whether the five witnesses or anyother

witnesses for the government identified him through use of the government

six pack array that is now capable of being shown to be a fabrication, that he

is entitled to vacating of the court's judgment and resentencing at the least

including revisiting the loss amount calculas as checks are not access

devices as shown above at page 6 footnote 5/, based upon a credible showing

of fraud upon the court perpetrated, in part, by an officer of the Court,

AUSA Joesph McNally, who also suborned the perjurious testimony of Secret

Service Agents Wesley Schwark, and James Mikkelson. For the only reasonable

objective conclusion to be drawn from Mr. Cox's submissions in this proceeding,

is that, Agent Mikkelson conducted the identifications in 2009 as Ronisha

Jessie claims in her averment, for Agent Schwark had left the Santa Ana

office branch in 2007, and the California Department Of Corrections Archive

photo Cox has obtained shows on its face that the photo used in the government's

previous memorialized Sealed filing, CRD #312-3, was not taken until October

30, 2008. Therefore, if the Court fails to vacate its judgment based upon

the existing habeas and criminal records of the court, a manifest injustice will occur by permitting the government actors and agents to escape wrong doing, to the detriment of the administration of justice and its truth seeking function. [10/]

        (b.) The Court's August 10th Judgment Constitutes Clear Error In The Court's Unwillingness To Acknowledge Government's Fabrication Of Its Six-Pack Photographic Evidence.That Forms The Foundation For The Four-Level Enhancement Of Petitioner Cox's Sentence. Based Upon The Government's Misrepresentation That Five Or More Check Cashing Runners Were Led By Cox And Had Identified Him From Their Photographic lineups In Year-2005.

It is firmly established that a pro se litigant is entitled to liberal construction of his pleadings filed before the Court. See Haines v. Kerner, 404 U.S. 519, 520 (1972) Also, Zichko v. Idaho, 247 F.3d 1015, 1020(9th Cir. 2001) (The liberal construction "rule particularly applies to . . . motions filed by pro se prisoners." (citing United States v. Seesing, 234 F.3d 456, 462-63 (9th Cir. 2000)) Also see, Graham v. Henderson, 89 F.3d 75, 79 (2nd Cir. 1996)("[T]he pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest argument that they could suggest.") In reviewing the Court's August 10, 2022 judgment it is clear that, although the government failed to address Mr. Cox's claim of Prosecutorial Misconduct surrounding the government's fabrication of the photographic six-pack evidence by inclusion of a photo of Mr. Cox taken in year 2008, the Court applying this mandate of liberal construction does seem to have recognized

_____

10/ Mr. Cox ask the Court to take judicial notice of Criminal Docket Entries 288 through 288-3,309, 312 through 312-3  the defense and government July of 2011 Suppression related pleadings as used herein. Such is requested pursuant to Federal Rules Of Evidence, Rule 201(d). Also see, United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (recognizing a court may take judicial notice of its own records in other cases under Federal Rules Of Evidence 201)

24

this never before presented claim. In the Court's judgment ECF page 3 of 5 under the header, "A. Ineffective Assistance Of Counsel" Id, the Court notes: "underlying Petitioner's ineffective assistance claims is a photo six-pack allegedly used to identify him in 2005, which contains a photo Petitioner contends was taken in 2008." By recognizing this argument of Mr. Cox, the mandate of liberal construction required the Court to not look at this asserted claim and evidence Mr. Cox tendered in support of the same solely as if Cox were presenting an ineffective assistance of counsel claim. In doing so, Cox states the Court failed in the application of liberal construction Mr. Cox is entitled to, and cast the Court in the light of appearing to do the government's bidding. For Mr. Cox's 2255 claims and arguments can be reasonably understood to be presenting a wholly new claim upon which the earlier record shed little light, in that, he discovered after his criminal proceedings and sentencing had been concluded that the Government had obtained its favorable judgment through fraud and deception, and that the same relates to material matters that the Court used in making earlier determinations.

Mr. Cox argues, as indicated above, had the Court objectively considered his pro se filing, which were later further clarified by court approved associated habeas counsel, the Court may have recognized that the narrow Strickland exception applies to Mr. Cox's case due to the government having interfered with Attorney Thomas Wolfsen's ability to meaningfully challenge the government's photographic six pack evidence, which Attorney Wolfsen was at that time unaware that it was a fabrication and that the government averments given in support of its stated accuracy is also perjurious. Had the Court recognized Mr. Cox's argument that Attorney Wolfsen was purposefully given blacken out six-pack photographic evidence during the discovery phase, that those were used in Wolfsen's July 1, 2011 Suppression Motion pleading,

25

See CRD# 288-2   And, that when Attorney Wolfsen went to the Secret Service Office in response to Mr. Cox's many complaints about the darken six packs, Attorney Wolfsen was told by AUSA McNally and Agent James Mikkelson that the office copy machines were down. Id   Government acts of which could constitute interference with defense counsel's "ability" to conduct the defense of Mr. Cox, governmental acts if true would warrant the Strickland exception of a presumption of prejudice. Because Attorney Wolfsen's now alleged shortfalls is revealed to be the by product of Prosecutorial Misconduct and misrepresentation.  See Mr. Cox's Motion at page 9 of 55 (Cox stating he was influenced by the misrepresentation that the six-packs were not a fabrication) [11/] Mr. Cox argues under the newly presented claim of Prosecutorial Misconduct in the form of fabrication of material evidence presented before the Court by an officer of the court, who ratified its accuracy through the willful introduction of perjury by Agent Schwark that several witnesses identified Mr. Cox from photographic six-pack lineups in year-2005 that such warrants an evidentiary hearing be held. And, that Mr. Cox not be expected to establish prejudice under these presented circumstances and facts.

---

11/ "Due process guarantees under the [F]ifth [A]mendment the requirement that a defendant's guilty plea be voluntary and intelligent." Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969); Brady v. United States, 397 U.S. 742 (1970)(holding a guilty plea is not voluntary if it was "induced" by, "among other things, 'misrepresentation'") Id 397 U.S. at 755 (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir. 1957)(en banc) and United States v. Seng Chen Yong, 926 F.3d 582 (9th Cir. 2018) (recognizing an affirmative misrepresentation, which informs a defendant's decision to plead guilty and tinges the entire proceeding, renders the defendant's plea involuntary and violates his due process rights.) Id 926 F.3d at 594 (citing United States v. Fisher , 711 F.3d 460 (4th Cir. 2013) (interpreting "misrepresentation" to include deliberate fabrications by law enforcement officers used to obtain search warrant))

For example, in <u>Walberg v. Israel</u>, 766 F.2d 1071, 1076 (7th Cir. 1985) the Court observed, "If the State is not a passive spectator of an inept defense, but a cause of the inept defense, the burden of showing prejudice is lifted. It is not right that the State should be able to say, "sure we impeded your defense - - now prove it made a difference." Id

Being aware that their falsehood has come to light, the governmental response sidesteps Mr. Cox's claims of fabrication and perjury concerning their earlier reliance on the six-pack photographic evidence. Instead, the government praises Attorney Wolfsen for his cross-examination of a single witness Jessica Bacque, her statement that she did not make the identification of Cox. See G.R. 34 of 41 Pointing out that Attorney Wolfsen filed a Suppression Motion "regarding the supposedly suggestive lineups". Id at lines 23-25 of the government response. But, as to Mr. Cox's specific new claim, the government chose to ignore it, even though Rule 5(b) of the Rules Governing Section 2255 Proceedings required them to answer each allegation of Mr. Cox's §2255 motion. Especially, in light of the Court having issued them a Show Cause Order directing a response. See Federal Rules Of Civil Procedure, Rule 8 (b)-(6) (holding failure to address the defendants allegations "is admitted if a responsive pleading is required.") Doing so, even after they received service and notice of Mr. Cox's <u>pro se</u> position in the court approved Sur-Reply filings of associated habeas counsel, supplemental pleadings they also chose to ignore, and the habeas record likewise shows this Court elected to do the same, and in its August 10, 2022 judgment cited to the government response pleading as proof that Attorney Wolfsen had not been ineffective. See Court's <u>Minute Order</u> ECF page 3 of 5 through 4 of 5. Therefore, resulting in a manifest injustice through in correct application of law.

27

Because 28 U.S.C. §2255(b) requires the Court after receipt of the parties
pleadings, to make findings of fact and conclusions of law with respect to the
claims Mr. Cox asserted, this was not done in this case with respect to Mr. Cox
claim of the government's fabrication of photographic evidence and perjury.

> (i.) Contrary To The Court's Belief Use Of The Government Photographic
> Six Pack Evidence To Give Cox A Four-Level Enhancement For
> Directing Five Or More Persons Does Amount To Significant
> Prejudice For Sixth Amendment Purposes. If Governmental Wrong
> Doing Is Established.

The memorialized record shows that the Court were persuaded by the
government that Mr. Cox was involved in the charged conspiracy beginning in
year-2005 with codefendant Angus Brown. See ATTACHMENT 7 (excerpt transcripts)
The April 4, 2014 hearing transcript shows that the Court used the government
witnesses identification of Mr. Cox from lineups as the basis for giving him
a four-level enhancement for being a leader in the charged conduct. See
page 50:1-25 through page 52, here it is shown that Guadalupe Mendoza,
Yolanda Magana, Ronisha Jessie, Brandon Pettus, and others were used to give
Mr. Cox a leadership role increase because they were identified as check
runners in the scheme. And Secret Service Agent James Mikkelson was asked to
give testimony to the Court on how the identifications had occurred, See
ATTACHMENT 2 hereto, page 73:12-17 and 81:4-8   And, therefore, even if,
Mr. Cox were not convicted on any Count involving the identification of him by
Jessica Bacque, Ronisha Jessie, Guadalupe Mendoza, Yolanda Magana, Brandon
Pettus, and others unknown, his sentencing is based on the government
fraudulent six-pack photographic evidence. And no one can dispute that a
four-level enhancement of a defendant's sentencing range based upon evidence
manufactured by the government and bolstered by its agents to be accurate
violates due process and does have Sixth Amendment significance.

28

For example, in Glover v. United States, 531 U.S. 198, 202-04 (2001) the United States Supreme Court was asked the question whether "a showing of prejudice, in the context of a claim for ineffective assistance of counsel, requires a significant increase in a term of imprisonment?" Id The Court answered the question by finding that ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because "any amount of [additional] jail time has Sixth Amendment significance." Similarily, when attorney Wolfsen failed to file the motion to compel the government to provide viewable six-pack photographic evidence it relied on to establish the beginning period of their charged conspiracy and Overt Acts in advance of the July 2011 Suppression Hearing and Mr. Cox pleading guilty Attorney Wolfsen's failure to do so prevented Mr. Cox from discovering that the government's six packs involving all of its witnesses were a fabrication, and thus could not be used to support either his conviction or sentencing. Likewise, when AUSA Joesph McNally deliberately provided blacken out copies of their photographic evidence to attorney Wolfsen in the same manner, the government's misconduct interfered with Attorney Wolfsen's ability to be in a position to then consult with Mr. Cox to plot out the courses of action for the defense moving forward, and therefore Mr. Cox has established prejudice whether it be attributed to Attorney Wolfsen or the government misconduct as later discovered by Mr. Cox after-the-fact, the result is the same, i.e., the government's successful influence in convincing the Court that the identifying check runners were correct that Cox were a participant in 2005 as the government charged and that he were responsible for directing and leading at least five of them. Thus, resulting in a significant United States Sentencing Guidelines range increase of his sentencing by four base offense levels, which is even more grievous than were imposed against the defendant Glover in the case cited above.

29

Reconsideration of the court's judgment is warranted to prevent a manifest injustice in this case.

    B. Establishing Prejudice Is Not An Element Of Fraud Upon
      The Court That Defiles The Judicial Process. And, Is
      Perpetrated By Or Suborned By An Officer Of The Court.

  As Mr. Cox set out above he is entitled to a liberal construction of his
pro se pleadings. At page 30 of 55 of his pro se motion Cox points to the
affidavit he obtained post proceeding from government witness Ronisha Jessie,
Exhibit I to his motion, reproduced here as ATTACHMENT 3. Ronisha Jessie
avers she never met Secret Service Agent Wesley Schwark in 2005, and that she
was interviewed by Secret Service Agent James Mikkelson in 2009 concerning a
check she had cashed that were associated with Count 3 of Mr. Cox's indictment.
In the pro se motion Mr. Cox clearly argues that the evidence was "fabricated
against him, and withheld by the prosecution." Mot. page 31 of 55 Cox motion
goes on to argue: "The prosecution knew that Mikkelson did the Ronisha Jessie
and Jessica Bacque interview, and that it was not Agent Wesley Schwark. It knew
its perjury during the 7/28/2011 suppression hearing, when he [Schwark] declared
under perjury that he interviewed Ronisha Jessie, and Jessica Bacque. The
prosecutor knew [AUSA Joesph McNally] that it was in fact Agent Mikkelson who
interviewed both in 2009." Id Cox's pro se motion goes on to argue,
"Prosecutorial misconduct encompasses knowledge known only by its police
officers investigating the case. And, because both Agent James Mikkelson and
Agent Schwark knew that Schwark never interviewed Jessica Bacque or Ronisha
Jessie their misconduct falls on the prosecutor. Because if he didn't know
he should have. Bottom line." Mot. page 32 of 55

It is, therefore, clear that Mr. Cox pro se pleading sufficiently presented a distinct claim of Prosecutorial Misconduct and related perjurous testimony by government agents surrounding the fabrication and introduction of a governmental six pack photographic array lineup that contains a 2008 photograph of Cox that the government introduced during the criminal phase of Cox proceeding in their court pleading, See CRD# 312, 312-2 through 312-3, as proof that several of its witnesses used to identify Cox in 2005 as being a participant of the charged bank fraud conspiracy and identity theft scheme. A 2008 photo of Mr. Cox that appears in the government's Opposition to Suppression filing by the defense, See CRD# 312-3 and Compare with Attachment 5 [photo taken of Mr. Cox on October 30, 2008 at a California Parole Office] Which fabricated government evidence Cox now claims induced him into pleading guilty. A claim that cannot be readily discounted based upon the record Mr. Cox and his court approved habeas counsel advances. One that requires further exploration for Mr. Cox under such circumstance is not the only victim of such government misconduct, but the integrity of the court itself and the administration of the truth seeking function it holds. The prior existing record clearly shows Attorney Wolfsen were not aware of this critical and important defect in the government's earlier use of this evidence, thus, this court must reconsider this matter anew to prevent a manifest injustice from occurring by rewarding the government earlier wrong doing through silence and indifference.

For example, in Hazel-Atlas Glass Co. v. Hartford Empire Co, 322 U.S. 238 (1944) the Supreme Court found that Courts have the inherent authority to correct judgments obtained through fraud or intentional misrepresentation. Id 322 U.S. at 244 (allowing relief for "after-discovered fraud") Although rare, courts have applied this standard to the criminal proceeding. See United States v. Bishop, 774 F.2d 771, 775 (7th Cir. 1985)

31

In Hazel-Atlas, the United States Supreme Court set aside a twelve-year old judgment on account of new evidence of a "deliberately planned and carefully executed scheme to defraud not only the Patent Office but [a] Circuit Court Of Appeals" in order to obtain a patent. 322 U.S. at 245-246. The Court explained that fraud on the Court involves "far more than injury to a single litigant" because it threatens the very integrity of the judiciary and the proper administration of justice. Id at 246

In the case at bar, Mr. Cox states he discovered after his earlier proceedings had been concluded that the government had obtained judgment based, in part, on the fraudulent fabrication and introduction before the Court a six-pack photgraphic array lineup that were pertinent to material matters the court was asked to determine, from Mr. Cox's July 1, 2011 Suppression Motion, to Whether or not he should be given a four-level leadership role enhancement of his Sentencing Guidelines range, and whether the charged conspiracy as to Mr. Cox involvement actually begun in year-2005 as the Superseding Indictment charged through Overt Acts, and Whether the government's claim that five or more witnesses were picking Mr. Cox out in the government evidence array exhibits were accurate. Evidence the government counsel bolstered with testimony and declarations of Secret Service Agent Wesley Schwark to be true. And as an Officer of the Court accepted as a proven fact, and fashioned Mr. Cox's loss calculation and sentence upon.

As Mr. Cox argued above the government wishes to absolve themselves from their support of the fabrication of material evidence as identified now by Mr. Cox by pointing with praise to Attorney Wolfsen's earlier Suppression filing and his cross examination of Jessica Bacque and the successful elicited admission by her that she never identified Cox from the government six-pack.

32

And, as the Hazel-Atlas Court has recognized, prejudice is not an element of fraud Upon the Court. 322 U.S. at 238  Fraud upon the Court occurs when the misconduct harms the integrity of the judicial process, regardless of whether or not the opposing party is prejudiced. See Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989)  What AUSA Mr. McNally did with the aid of perjurous testimony by Agents Schwark and Mikkelson was clearly designed to influence the decisions of this Court, and having succeeded in achieving a favorable judgment obtained, in part, through deception should not now seek to require Mr. Cox to shoulder the burden of establishing prejudice. Strickland's presumption of prejudice should therefore prevail in this case, based upon unlawful government misconduct as setforth in Mr. Cox's motion and those of court approved assosciate habeas counsel in their Sur-Reply pleading, CVD# 28.

VI.

CONCLUSION

WHEREFORE, Lewellyn Charles Cox IV does move this Honorable Court for an order setting aside its  August 10, 2022 judgment denying his first-time 28 U.S.C. §2255 motion, and for any further relief the Court deems just and necessary.

Respectfully Submitted,

Lewellyn Charles COX IV, Pro Se
Fed. Reg. No. 48963-112
FCC Beaumont Low
P.O. BOX 26020
Beaumont, Texas 77720

Pleading Prepared By
INMATE/LEGAL ASSISTANT:

Larry D. Wilson
Fed. Reg. No. 08456-026
P.O. BOX 26020
Beaumont, Texas 77720

Executed this 29th Day of August 2022

33

# VII.

## CERTIFICATE OF SERVICE

I Lewellyn Charles Cox IV do certify that I have served a copy of my Federal Rules Of Civil Procedure, Rule 59(e) motion upon the United States by U.S. Mail, first-class postage prepaid and addressed as follow:

> United States Attorney Office
> C/O: Joesph McNally, AUSA
> 1500 United States Courthouse
> 312 North Spring Street
> Los Angeles, California 90012

Executed this 29th Day of August 2022

Lewellyn Charles Cox IV, Pro Se

# ATTACHMENT 1

1   ANDRÉ BIROTTE JR.
    United States Attorney
2   ROBERT E. DUGDALE
    Assistant United States Attorney
3   Chief, Criminal Division
    E. MARTIN ESTRADA (Cal. SBN: 223802)
4   JOSEPH McNALLY (Cal. SBN: 250289)
    Assistant United States Attorneys
5   CRISTINA M. MORENO (Fla. SBN: 41687)
    Trial Attorney, U.S. Department of Justice
6        1500 United States Courthouse
         312 North Spring Street
7        Los Angeles, California 90012
         Telephone: (213) 894-3358
8        Facsimile: (213) 894-3713
         Email: Martin.Estrada@usdoj.gov
9               Joseph.McNally@usdoj.gov
                Cristina.Moreno@usdoj.gov
10  Attorneys for Plaintiff
    UNITED STATES OF AMERICA

11

12                    UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                         SOUTHERN DIVISION

15  UNITED STATES OF AMERICA,        ) CR No. 09-248(B)-DOC
                                     )
16                    Plaintiff,     ) PLEA AGREEMENT FOR DEFENDANT
                                     ) LEWELLYN CHARLES COX IV
17             v.                    )
                                     )
18  ARMAN SHAROPETROSIAN, et         )
                                     )
19  al.,                            )
                                     )
20                    Defendants.    )
                                     )
21  _____

22

23       1.  This constitutes the plea agreement between LEWELLYN

    CHARLES COX IV ("defendant") and the United States Attorney's

24  Office for the Central District of California ("the USAO") in the

25  above-captioned case.  This agreement is limited to the USAO and

26  cannot bind any other federal, state, local, or foreign

27  prosecuting, enforcement, administrative, or regulatory

28
                                   [1]

1  3E1.1(b)) only if the conditions set forth in paragraph 27 are

2  met.  Subject to paragraph 30 below, defendant and the USAO agree

3  not to seek, argue, or suggest in any way, either orally or in

4  writing, that any other specific offense characteristics,

5  adjustments, or departures relating to the offense level be

6  imposed.  Defendant agrees, however, that if, after signing this

7  agreement but prior to sentencing, defendant were to commit an

8  act, or the USAO were to discover a previously undiscovered act

9  committed by defendant prior to signing this agreement, which

10  act, in the judgment of the USAO, constituted obstruction of

11  justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be

12  free to seek the enhancement set forth in that section.

13  Defendant understands that defendant's offense level could be

14  increased if defendant is a career offender under U.S.S.G. §§

15  4B1.1 and 4B1.2.  If defendant's offense level is so altered,

16  defendant and the USAO will not be bound by the agreement to

17  Sentencing Guideline factors set forth above.

18       14.  Defendant understands that there is no agreement as to

19  defendant's criminal history or criminal history category.

20       15. Defendant and the USAO agree that, regardless of whether

21  the sentence is within or outside the sentencing range

22  established by the Sentencing Guidelines, a sentence of 180

23  months imprisonment is a reasonable sentence for the count of

24  conviction based on the factors set forth in 18 U.S.C. §

25  3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

26                  WAIVER OF CONSTITUTIONAL RIGHTS

27       16.  Defendant understands that by pleading guilty,

28  defendant gives up the following rights:

# ATTACHMENT 2

James Mikkelson / Court Examination

1          THE WITNESS:  -- the ID off of each thing.

2          THE COURT:  -- absolutely.

3          REPORTER:  We don't know the witness's name yet.

4          THE COURT:  Yes, we're going to start with Guadalupe

5    Mendoza.

6          REPORTER:  No, we don't have the witness's name.

7          THE COURT:  Oh, I'm sorry.  State your name, sir.

8          THE WITNESS:  James Mikkelson, "M" as in Mary,

9    I-K-K-E-L-S-O-N.

10          THE COURT:  Are you the investigator on the case?

11          THE WITNESS:  Yes, your Honor.

12          THE COURT:  Now, what I'm trying to determine, if

13    there are five or more people as it pertains to paragraph 87.

14    Going to determine whether he's an organizer or a leader that

15    involved five or more participants or whether it was otherwise

16    extensive, subsection "A" in that paragraph.  Guadalupe

17    Mendoza, positive identification?

18          THE WITNESS:  Yes, your Honor.  He was shown a six-

19    pack lineup by a previous agent, Agent Wes Schwerk (phonetic).

20          THE COURT:  Was he picked out out of that six-pack

21    lineup, or was it an identification wherein he says, "I'm not

22    sure," and then he showed him a single photograph?

23          THE WITNESS:  I reviewed records, your Honor, and I

24    located the six-pack and I specifically went out during my

25    investigation on a follow-up, spoke with Guadalupe Mendoza,

James Mikkelson / Court Examination                    74

1   reminded him about the six-pack, showed him and asked him, "Is

2   this your identification?  Is this relating to the individual"

3   -- and I want to recall it was a white Jaguar, but I don't --

4   without seeing it in front of me, I'm not sure which vehicle.

5           THE COURT:  Let me ask that again.  Did he pick him

6   out of a six-pack?

7           THE WITNESS:  Yes.  He confirmed his original pick to

8   me.

9           THE COURT:  Okay.  And who was the person who

10  visually showed him the original six-pack?

11          THE WITNESS:  The original six-pack was shown by

12  Agent Wes Schwerk.

13          THE COURT:  Now, you have a copy of those reports.

14  And remember, the testimony that I have received was that a

15  six-pack was shown, and then it gets very confusing because

16  sometimes it seems that a single photograph was then shown.

17  And I can't tell which person or what process was followed.

18  So, when the original six-pack was shown -- the original six-

19  pack was shown by another person -- what do your reports

20  indicate?  Was Mendoza able to pick him out of the original

21  six-pack that was shown?

22          THE WITNESS:  Through the reports and through --

23          THE COURT:  Yes or no.  It's a simple question, yes

24  or no.  And if you don't know, then go find out.  In other

25  words, you listen to me now.  These may be very good

James Mikkelson / Court Examination

1   identifications where a six-pack is shown a witness, and he

2   looks at six photographs and he picks out one photograph.   I'm

3   going to accept that.   But I don't know from you or the

4   Government yet if a photograph, a six-pack, was shown and

5   Mendoza says, "I don't know.   This person could look familiar,"

6   and then one photograph was shown.   And then subsequently you

7   go out in good faith and the person picks out one photograph.

8   I don't know if I'm going to accept that because by that time,

9   the person has already been shown one photograph.   And you're

10  the only one who can tell me, and you're responsible for this,

11  and I don't want a lot of words.   I want yes or no's now.   And

12  if you don't know, tell me you don't know.

13              THE WITNESS:   I showed Guadalupe Mendoza --

14              THE COURT:   I'm not interested in what you showed.

15  I'm going to go back to my question.   I'm only interested in

16  the original person who went out there.   Did he show him a six-

17  pack photograph?   Your answer was yes.   My question is, did he

18  pick out one of those people from that six-pack photograph, yes

19  or no?   Or I don't know.

20              THE WITNESS:   I don't know.

21              THE COURT:   Okay.   Now, how would I know -- as a

22  Judge, then where can I get that information?

23              THE WITNESS:   It was turned --

24              THE COURT:   I'm not interested in your photographs.

25  I'm interested in the original photograph that was shown to

James Mikkelson / Court Examination                    76

1   him.

2             THE WITNESS:  I showed the original photograph to

3   him.

4             THE COURT:  No, you didn't.  You went out

5   subsequently and showed it to him, you told me.  You went out

6   after he was -- identified the person.

7             THE WITNESS:  Correct.  And I used the photograph

8   where he --

9             THE COURT:  I'm not interested in that.  That's what

10  you're not understanding.  He's already been biased.  He's

11  already been prejudiced.  He's already picked somebody out.

12            THE WITNESS:  Correct.

13            THE COURT:  I'm not interested in your photograph; do

14  you understand?

15            THE WITNESS:  Yes, your Honor.

16            THE COURT:  Then answer my question.  You don't know

17  if this photograph, this six-pack, had the person say, "That's

18  him."  You don't know that, do you?

19            THE WITNESS:  All I know is what was in the reports,

20  your Honor.

21            THE COURT:  Then go get that report.  Okay, we're

22  going to take a break.  You are going to get him prepared

23  immediately.  I can see the conflict occurring.  And either

24  he's avoiding me, and this witness is out, or he doesn't

25  understand.  Do you understand what I'm driving at?

1          MR. MC NALLY:  Understood.

2          THE COURT:  If he's shown a subsequent photograph, I

3    don't care about this officer going out and picking the person

4    out.  The cat's already out of the bag.  Take a recess.  Please

5    step down and talk to the Government.

6          THE WITNESS:  Yes, your Honor.

7      (Witness steps down)

8          THE COURT:  All right, I'll be back in 20 minutes.

9      (A recess was taken from 1:25 p.m. to 1:25 p.m.; resume)

10          THE COURT:  Government and counsel -- Government, do

11    you need time?  Because I'll put it over to Monday if I -- if

12    you need time, because we're going to go through every one of

13    them.  I'm doing that as a courtesy now.

14          MR. MC NALLY:  Yeah, I think --

15          THE COURT:  Right now, this witness is out.

16          MR. MC NALLY:  Yeah.  I think that that would be

17    better.

18          THE COURT:  All right.  Gentlemen, we're going to

19    recess until Monday, and I'm going to have you back in my court

20    at 10:00 o'clock in the morning.  The Government is going to go

21    through it, and here's the way it stands.  I want to know if

22    you were picked out of an original six-pack photograph when it

23    was shown.  And either this witness is going to tell me or

24    you're going to get that witness in.  Understood?

25          MR. MC NALLY:  Understood.

78

1          THE COURT:  And I'm not interested in this witness

2   going back out and in good faith -- as a law enforcement

3   officer, I know you believe that that's good.  But if in fact

4   there was a six-pack photograph and a witness says, "I don't

5   know," and then he's shown one photograph, I don't have a

6   record or any knowledge when that photograph's put in front of

7   him.  And then by the time you go out, he's already identified

8   him.  But nobody did that intentionally, but I don't know

9   whether I'm going to accept that.  I don't know yet.

10          MR. MC NALLY:  Your -- and I think part of what he

11   was trying to articulate is he pulled the original six-pack

12   that was shown from evidence, went out and said, "Mr. Mendoza,

13   is this your initials?" and confirmed that that --

14          THE COURT:  No.

15          MR. MC NALLY:  -- original six-pack --

16          THE COURT:  Oh, my God.

17          MR. MC NALLY:  But we'll get the documents in front

18   of the Court.

19          MR. MC NALLY:  Oh, my God.  What is missing here?  I

20   just asked him that.  I just asked him and you've just thrown

21   in now that he picked out the original six photographs.  I

22   understand that.  But he didn't go out and show him the

23   original six photographs, did he?  He said he did not.  He said

24   somebody else did.  He said he went out subsequently, after

25   he'd been identified, and showed it to him.  That's his

14

1    specific testimony.

2          MR. MC NALLY:   We obviously need to have a

3    conversation, and so I --

4          THE COURT:   Yeah, I think we do, too.

5          MR. MC NALLY:   -- appreciate the courtesy.

6          THE COURT:   I think it's just going to go back and

7    forth.  Unless I have some clarity, you're either getting those

8    people in or I'm not going to make the finding.  Or this

9    officer is going to know from the reports, because I can accept

10   that.  But I need to know.  I don't like this record right now.

11         MR. WOLFSEN:   I just want to say two things.  When

12   Agent Schwerk testified, he testified that he took seven photos

13   out with him and showed him the six and then he showed him the

14   other one.  That's what Agent Schwerk said originally.  With

15   regards to Monday --

16         THE COURT:   Let's stop.  If the intonation is that

17   he's setup unintentionally, I'm not accepting that either.  If

18   the witness picks your client out of those six photographs when

19   initially shown, then I've got a high degree of confidence.  If

20   the witness says on the first go around, when this agent isn't

21   present, to whomever went out there -- and I don't know -- "I

22   don't know who the person is," or "This person might look

23   familiar," and then he's shown one photograph and finally makes

24   a positive identification, I've got less degree of confidence.

25   And I can't tell from this record right now.  I don't even know

80

1   from the reports, which I might be willing to accept, whether

2   in fact an initial identification was made or not, do I?

3               MR. WOLFSEN:  You don't.  I just have one thing.

4   Monday through Thursday I am scheduled for eight to ten hour

5   infusions --

6               THE COURT:  Oh, you'll be there.  No.  Then I guess

7   it's going to be the following week, isn't it?

8               MR. WOLFSEN:  I mean, I apologize --

9               THE COURT:  No, no, don't apologize for that.

10              MR. WOLFSEN:  And if I hadn't spent -- the medicine

11  is $3,500.  If I hadn't done it, I'd try to change.

12              THE COURT:  No, no, no.  Well, how long will it take

13  to get this together, do you think?

14              MR. MC NALLY:  We'll spend the rest of the day doing

15  it.  I --

16              THE COURT:  We're not -- we can't -- if you can't do

17  it today, that's fine.  I just want clarity on this.  I'm not

18  going to just sweep the (indiscernible) walk back there.

19              MR. MC NALLY:  Understood.

20              THE COURT:  I don't like this record and I'm not

21  going to do that.  Well, Julie --

22              MR. WOLFSEN:  Is the Court available next Friday?

23              THE COURT:  No, I don't -- just a moment.  Am I?

24          (Judge/Clerk confer)

25              THE COURT:  No, no.  So don't -- and in fact, I'm not

81

1  available again until the 22nd because we have a full calendar

2  the 21st.   Twenty-second, April 22nd.

3              MR. WOLFSEN:  It's good for me.

4              THE COURT:  There's only two things I need.  I just

5  need to make certain of my loss amount with more clarity and I

6  need to make certain of the four levels for sophistication and

7  that I've got five people picking him out.  Now, Nikkia Brooks

8  is --

9              MR. WOLFSEN:  We concede that.

10             THE COURT:  -- credible to me.  That's one right

11 there.

12             MR. WOLFSEN:  We concede that.

13             THE COURT:  Number two, if you've got the original

14 person that went out, or even if this agent went out as the

15 original person with the six-pack and he gets on the stand and

16 tells me, "I'm the original person that went out with the six-

17 pack, picked out the photos, and this victim picked out this

18 person," I've got a high degree of confidence.  So why don't

19 you spend a moment with him, because he may have been the

20 original person.  But starting off with Mendoza he's not.

21 Somebody else does and I don't know who that is.  I don't even

22 have a report.

23             MR. MC NALLY:  Well, I can tell the Court what we did

24 before.  We had a pretrial suppression motion, if you recall,

25 on this same issue.  I flew the agent out from Washington, D.C.

62

1  who actually did the six-packs for the same purpose, the same

2  issue, because of the Court's concern.

3        THE COURT:  Oh.

4        MR. MC NALLY:  I'm just going to fly him -- I'll fly

5  him back here again.  I mean, I could pull the transcript.

6        THE COURT:  No.

7        MR. MC NALLY:  But the testimony --

8        THE COURT:  No, timeout.  I'd forgotten that.  You

9  have to remember the volume of work we have here.  I can

10  certainly pull the transcript.  And if it's in that transcript,

11  I'm probably going to accept that.

12        MR. MC NALLY:  Okay.

13        THE COURT:  I just can't remember the ten names or

14  five names.  And quite frankly, we've had years between the

15  genesis of this case.  So I don't have a photographic memory.

16  That's my fault.

17        MR. MC NALLY:  And let me also --

18        THE COURT:  And you can pull the transcript if you

19  want.

20        MR. MC NALLY:  And let me also confirm that it's the

21  same five people.  It may be more, it may be different.

22        THE COURT:  Look them over, because you don't have to

23  fly him out.  If you've got a transcript and we actually sat

24  through that --

25        MR. MC NALLY:  I don't have the --

83

1          THE COURT:  -- I'd be happy to pull that transcript.

2          MR. MC NALLY:  I don't have the transcript.  I will

3    order it today.

4          THE COURT:  All right.  Now, counsel can't come back

5    until the --

6       (Break in audio from 1:32 p.m. to 1:33 p.m.)

7          THE COURT:  Does that give you enough time?

8          MR. MC NALLY:  That's plenty of time.

9          THE COURT:  Okay.  I want you to show me again why

10   it's over seven million.  Go through that.  And once you --

11   just so I'm absolutely certain.

12          MR. MC NALLY:  I'm sorry, your Honor?

13          THE COURT:  I want you to show me again why it's over

14   seven million.  I want to be absolutely certain.  Number two --

15   and that's actual loss, not intended loss.  Number two, I want

16   to be absolutely certain that you've got five people that have

17   some kind of record how the identification took place

18   (indiscernible) and if that was already done with an agent at

19   pretrial, I can't remember if that agent testified to Mendoza,

20   I can't remember if that agent testified to Jessie, Pettus,

21   Magana, Lawrence -- which they're disputing because the client

22   was in jail but may not have been in jail the whole time --

23   Brooks, Young, Watson, Washington, Hawkins.  And Nikkia Brooks,

24   I'm already accepting.  That's one.  Those are the only two

25   areas I'm concerned about.

# ATTACHMENT 3

My name is Ronisha Jessie, I'm writing to clarify that I never met Agent Wesley Schwark and was never asked to view any six pack of photos in 2005. The only time I was questioned was in late 2009 by Agent James Mikkelson. It was in 2009 I was asked to identify a person in a six pack. I felt pressured to pick the person after Agent Mikkelson pointed to the photo.

Under the penalty of perjury this is true.

_____ Dated 9·24·20

Ronisha Jessie

# CALIFORNIA NOTARIAL CERTIFICATE

## (JURAT)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 24th day of September, 20 20, by Ronisha Jessie _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)



# ATTACHMENT 4

My name is **Jamala Pratt** I am writing to inform the Court that I was a eyewitness present at the time the photo depicted in Government Bates number 048063 showing my Ex Husband Lewellyn Cox was photographed. The photo was taken in the parole office in late 2008 shortly after he was released from prison. It was this day that I drove Lewellyn Cox to the parole office and I witnessed his parole officer take the photo. Also I know for a fact Lewellyn did not cut his mustache thin straight across until 2008 because we were married over 14 years and I seen his mustache cut thin for the first time on August 7, 2008 the day I picked him up from the Metrolink train station the day of his release from Chino state prison.

*Jamala Pratt*
_____
Jamala Pratt

Date __10·2·2020__

Under the penalty of perjury this is true

A notary public or other officer completing  this certificate verifies only the identity of the individual who signed the
document  to which this certificate is attached, and not  the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this _02_ day of _October 2020_, by
**Jamala Pratt** _____ , proved  to me on the basis of
satisfactory evidence to be the person(s) who appeared before me.

Signature _____ ( Seal )



PEGGY N. RODRIGUEZ
Notary Public - California
Los Angeles County
Commission # 2268808
My Comm. Expires Nov 30 2022

# ATTACHMENT 5

Page : of 1

Name  COX, LLEWELYN C.
Offender Photograph

CDC #: F23780  PID #: 11197148
Friday August 20, 2021 01:51:10 PM

| | |
|---|---|
| Date Taken: 10/30/2008 | Time Taken: 15:41:25 |
| Source: State Parole Office | Facility/Office |
| Type: Front View | |
| Date ID Card Printed: 08/20/2021 | Card Sequence  0 |



**Show Last Updated Information**

# ATTACHMENT 6

Declaration of Elizabeth Cox

(1) I am the mother of Lewellyn Cox, and was present at court on 06/27/2014

(2) In the hall of the court Jessica Barque approached me an told me that she never seen my son Lewellyn Cox before and did not identify him as the passenger of the white Jaguar on 05/16/2005. Bacque stated that the officers were framing him. Bacque said that she did not meet with and federal agents until 2009.

(3) I remember talking to Lewellyn's attorney Thomas Wolfsen May 2014 and asking him to supply Lewellyn with viewable six packs', because they were blacked out.

(4) I received viewable copies of the six packs for Jessica Barque's in dentification of my son after Lewellyn was sent to prison In 2014 and noticed that the shirt he wore was purchased by me on his birthday on 08/02/2007.

Under the penalty of perjury this is true.

The above named claimant, of full legal age, who subscribed the foregoing statement be fore me and made oath that the answers are each and all complete and true

My county of residence is ___El Paso, Texas___

My commission expires ___August 11, 2023___   Notary Public _____

8/27/20 20

___Elizabeth Cox___

LORENZA FRAIRE
Notary ID #4753725
My Commission Expires
August 11, 20?3

# ATTACHMENT 7

15

| | | |
|---|---|---|
| 10.45 | 1 | THE COURT: You were up there for a year or less? |
| 10.45 | 2 | THE DEFENDANT: Yes, sir. |
| 10.45 | 3 | THE COURT: On the parole violations? |
| 10.45 | 4 | THE DEFENDANT: Yes, sir. |
| 10.45 | 5 | THE COURT: And then these charges came down? |
| 10.45 | 6 | THE DEFENDANT: Yes, sir. |
| 10.45 | 7 | THE COURT: Okay. Anything else you'd like to |
| | 8 | say, sir? |
| 10.45 | 9 | THE DEFENDANT: No. |
| 10.45 | 10 | THE COURT: Counsel. |
| 10.45 | 11 | MR. SCOTT: No, Your Honor. |
| 10.45 | 12 | THE COURT: Let me turn to the government. |
| 10.45 | 13 | MR. McNALLY: Your Honor, obviously, the Court sat |
| | 14 | through trial and understands just how sophisticated this |
| | 15 | is. The troubling part with Mr. Brown is, is that going |
| | 16 | back to 2005, he's identified by, you know, individuals who |
| | 17 | were runners and bank employees, starting -- you know, |
| | 18 | basically, to be heavily involved in the scheme, um, |
| | 19 | starting on that date. |
| 10.46 | 20 | THE COURT: With Lewellyn Cox. |
| 10.46 | 21 | MR. McNALLY: With Lewellyn Cox. |
| 10.46 | 22 | And the Court will also remember the testimony. |
| | 23 | There's a -- and I think we laid out in our papers -- a |
| | 24 | series of times when he's sent to prison. |
| 10.46 | 25 | You heard from Kelly Hanson at trial, and |

29

1   profits and forwarded account information to other

2   participants in the scheme.  The least culpable would be the

3   runners who cashed the checks.

4                 But according to the information that the Court's

5   also received and now heard at trial, Mr. Brown, with the

6   co-defendant Mr. Cox, began the scheme sometime in 2005.

7   Mr. Brown continued to participate and direct it through

8   sometime in 2011.

9                 During that period of time, Mr. Sharopetrosian

10  came into Mr. Brown's view and was taught how to conduct the

11  scheme, including how to phone forwarding aspects of the

12  scheme and how to fraudulently obtain legitimate checks.

13                Together, Mr. Brown and Mr. Sharopetrosian ran the

14  scheme from inside the California state prisons, supervising

15  and directing other co-defendants.

16                This Court finds Mr. Brown was responsible for

17  bribing bank employees for confidential account information.

18  He also directed co-defendants to pick up checks that were

19  ordered fraudulently and to obtain victims' signatures

20  either online or from various public records.

21                Accordingly, Section 3B1.1(a) is appropriate,

22  because here the defendant was, in fact, an organizer or

23  leader of the criminal activity that involved five or more

24  participants and was otherwise extensively involved.  And

25  the Court finds a four-level increase of the offense is

11:25   (line 4)
11:25   (line 9)
11:26   (line 13)
11:26   (line 16)
11:26   (line 21)